[No. 8768.	Department One. — February 25, 1886.]

HENRY BROOK, Appellant, v. HOMER HORTON et al., Respondents.

Municipal Corporation — Street — Legislature may Vacate — Delegation of Power. — The legislature has power to vacate a street in a city, and may delegate its power to the municipal authorities of the city.

Id. — Alteration in Street — Discontinuance. — An alteration by competent authority of an existing road or way is a discontinuance of those portions of the way which do not come within the newly assigned limits, although no special order of discontinuance is made.

Id. — San Francisco — Mariposa Street — Discontinuance by Alteration in Official Maps. — The premises in controversy are situated in the city and county of San Francisco, between Channel Street and Alabama Street, and are a part of Mariposa Street, as those streets were laid down on the map of 1856, known as the Van Ness Ordinance Map. On the 30th of January, 1866, and in October, 1870, the board of supervisors of the city and county, acting under authority conferred upon them by the acts of April, 1862, and of April, 1864, approved and adopted certain maps, known respectively as the City Engineer's Map and the Humphrey's Map, as the official maps of the city and county. On neither of these maps did the premises in controversy appear as a street. *Held*, that the adoption and approval of such maps operated to discontinue the premises as a street.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to restrain the city and county of San Francisco, and its officers, from constructing a sewer in Mariposa Street, as the same is laid down on the Van Ness Ordinance Map, from Harrison to Channel streets. Judgment in favor of the defendants. The remaining facts appear in the opinion.

*William & George Leviston*, for Appellant.

*John Lord Love*, for Respondents.

BELCHER, C. C. — In 1855 an ordinance was passed by the common council of the city of San Francisco, which made it the duty of the city surveyor, acting in conjunction with three commissioners, to be appointed for the purpose, " to furnish by way of recommendation to the common council, within one month from the date of their appointment, a plan for the location and dimensions of the streets to be laid out within the city limits, west of Larkin and southwest of Johnston streets."

Commissioners were appointed, and they and the surveyor agreed upon and reported a plan or map as required. This plan or map was approved and adopted by the board of supervisors of the city and county in October, 1856, and " declared to be the plan of the city in respect to the location and establishment of streets and avenues, and the reservation of squares and lots for public purposes," in that part of the city named in the ordinance.

Subsequently the order and ordinances, under which the commissioners were appointed, and the plan or map was prepared, reported, and approved, were ratified and confirmed by the legislature. (Stats. 1858, p. 52.)

Upon the plan or map so made—which has since been known as the Van Ness Ordinance Map— was a street running north and south, called Channel Street, and having a width of two hundred feet. East of Channel Street, and running parallel with it at a distance of 132 feet, was a street called Alabama Street, and having a width of 80 feet.

On the west side of Channel Street were three streets, since known as Seventeenth, Eighteenth, and Nineteenth streets, which met it at right angles and terminated at its western margin.

On the east side of Channel Street were four streets, called Santa Clara, Mariposa, Solano, and Butte streets, which met it at right angles and terminated at its eastern margin.

In April, 1862, an act was passed by the legislature, entitled "An act to establish the lines and grades of streets in the city and county of San Francisco." (Stats. 1862, p. 407.) And in April, 1864, another act was passed having the same title, and amendatory of the former act. (Stats. 1863–64, p. 460.)

By both acts, the city and county of San Francisco was authorized to establish the lines and grades of the streets within the limits of the city, as established in 1851, and for that purpose a board of city engineers was created, who were to proceed, as soon as practicable, to survey all the streets and fix the lines thereof within the limits named, and to make a map or maps, showing thereon the width of every street, and to fix monuments for the preservation of the street lines so established.

The maps, when completed, were to be delivered to the board of supervisors, and notice thereof given by publication. Objections to them might then be made by any property owner.

If no objections were made, or those made were overruled, and the maps were finally approved and adopted by the board, it was provided that "then such maps and profiles shall stand as the legal and valid official plan of said city, to determine the lines of the streets and the grades thereof."

Under these acts a map was made which, after due notice, was approved and adopted by the board, on the 30th of January, 1866, and declared to be "the legal and valid official map of the city and county of San Francisco,

to determine the lines of the streets and the grades thereof."

This map, known as the City Engineer's Map, was the result of actual surveys, and the streets as represented upon it were laid out on the ground, and monuments were placed at the crossing of every street.

In June, 1869, the board of supervisors ordered a contract to be entered into with the city and county surveyor to prepare a map of the city and county according to official surveys. A map was prepared, known as the Humphreys Map, and in October, 1870, was by an order of the board " approved, adopted, and declared to be the legal official map of the city and county of San Francisco."

Upon these two maps, Channel Street as represented on the Van Ness Ordinance Map does not appear, and in place of it is a narrow street called Treat Avenue. Alabama Street as represented on that map has been removed, and adjoining, and along the east side of the place formerly occupied by it, is Harrison Street. Seventeenth, Eighteenth, and Nineteenth streets, instead of stopping at Channel Street, are extended to Harrison Street. Santa Clara, Mariposa, Solano, and Butte streets, instead of going on to Channel Street, are made to terminate at Harrison Street.

The premises in controversy lie between Channel Street and Alabama Street, and are a part of Mariposa Street, as these streets are laid down on the Van Ness Ordinance Map. The plaintiff purchased the premises in 1869, and has since occupied and improved them. At the time of this purchase, there were upon the premises a dwelling-house and some other improvements, which were erected as early as 1861.

The defendants contend, and the court below held, that when Mariposa Street was laid out on the Van Ness Ordinance Map it was dedicated to the public, and that as so laid out it is still a street dedicated to public use.

The plaintiff, on the other hand, contends that that part of Mariposa Street which lies between Channel Street and Alabama Street, as represented on the Van Ness map, was discontinued and abandoned as a street when the Engineers' map and the Humphreys Map were made and approved.

There can be no question that the legislature has competent power to vacate a street in a city, and that it may delegate that power to the municipal authorities of the city. (*Polack* v. *S. F. Orphan Asylum*, 48 Cal. 490.)

Here the legislature appointed a board of engineers, and directed them to survey all the streets of the city within certain limits, and to fix the lines thereof, and to make maps showing such lines, and it declared that when the maps should be made and approved by the municipal authorities, they should stand as the legal and valid official plan of the city. This gave the board of city engineers full power to make the map which they presented, and it constituted that map, when approved, the official map or plan of the city. It was direct legislative authority for the changes made from the Van Ness map, and necessarily operated to discontinue such streets and parts of streets as appeared on the Van Ness map, and did not appear on the new map.

It has been held in Massachusetts, and we think it must be held here, that an alteration by competent authority of an existing road or way is a discontinuance of those portions of the way which do not come within the newly assigned limits; and no special order of discontinuance is necessary. (*Commonwealth* v. *Westborough*, 3 Mass. 406; *Commonwealth* v. *Cambridge*, 7 Mass. 158; *Bowley* v. *Walker*, 8 Allen, 21.)

If this be not the rule, then Channel Street, which was laid out on the Van Ness map two hundred feet wide, is still a street of that width, though Treat Avenue was made to take its place with a width of only eighty feet, and the balance of Channel Street may now be covered with valuable improvements.

In our opinion, the premises in controversy are not now a part of Mariposa Street, and the judgment and order should therefore be reversed, and cause remanded for a new trial.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.

Hearing in Bank denied.