# City Council of Montgomery v. Parker.

*Prosecution for Violation of City Ordinance.*

# West v. Brown, *et al.*

*Bill in Equity for an Injunction.*

1. *Dedication of street; State has control of its use; rights of dedicator or grantor.*—When a part of a freehold becomes a public highway or public street in a city, either by dedication or conveyance by the owner, the State, in its sovereignty over highways and public places, has full police power to regulate the actions of all persons in the use of such street or highway, not inconsistent with its use as .a street or highway; and after such dedication or grant, the dedicator or grantor, as owner of the freehold, has no greater right or interest in the use of such street or highway, as such, and in the manner of its use, than any other person of the public.

2. *Same; same; delegation of power to municipality.*—The State may, by act of the legislature, confer upon or delegate to a municipality the power of control and supervision over the streets within its limits; and ordinances passed by a city council in the exercise of such power, which are within the authority conferred and not unreasonable, are enforceable, rendering those persons violating them subject to the punishment provided therefor.

3. *Public streets; municipal ordinance in reference thereto; violation thereof punishable; rights of proprietor of hotel.*—Where a municipal

[City Council of Montgomery v. Parker; West v. Brown *et al.*]

ordinance provides that a portion of a certain street in front of a designated hotel shall be "established as a stand for two hacks," and prescribes punishment for anyone who shall occupy such portion of said street with a hack when it is already occupied by two other hacks, and such ordinance is within the power conferred by the city charter, and is not shown to be unreasonable, it is enforceable; and the fact that a hack driver, who was prosecuted for the violation of said ordinance, was employed by the proprietor of said designated hotel, who ran a public hack line in connection with the hotel, and who owned the fee in the street, subject to the easement, does not give the offender immunity from punishment; and upon proof of the violation of said ordinance, such driver should be convicted.

4. *Streets; use by adjoining property owner; proprietor of hotel.* The proprietor of a hotel, who is the owner in fee of the land to the middle of the street, has no more right to the exclusive use of the street adjacent to the sidewalk in front of said hotel, or to permanently occupy such part of the street, than any other person; nor can such proprietor, as the owner of a public hack line, which he operates in connection with the hostelry, permanently occupy the street in front of his hotel with his hacks, to the exclusion of other hacks; and especially is this true when in so doing he violates a municipal ordinance.

5. *Same; same; injunction.*—The proprietor of a hotel, which abuts on a public street, can enjoin the use of such street by the hacks and transfer wagons of others in such manner as prevents and obstructs him and the guests of his hotel in their reasonable ingress to and egress from the hotel, and in the transportation of baggage, to their great inconvenience and to his injury, and to restrain the occupancy of the street in front of the hotel in a manner prohibited by a city ordinance; and a bill filed for such purpose, averring facts showing such use and occupancy, contains equity.

6. *Injunction; dissolved on the denials of the answer.*—Where, on a bill for an injunction, the facts upon which the relief is claimed, are positively and explicitly denied in the answer, the injunction is, as a general rule, properly dissolved upon motion made therefor; and in reviewing a decree dissolving an injunction upon the denials of an answer, this court will not consider the merits of the defense presented by affirmative averments in the answer.

APPEAL from the City Court of Montgomery.
Tried before the Hon. A. D. SAYRE, Special Judge.
APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JERE N. WILLIAMS.

These two cases, involving the same questions, were considered together on the present appeal, and one opinion rendered.

In the case of the City Council of Montgomery against Will Parker, the appellee was arrested by policemen of

said city for violating what is known as the hack ordinance of said city, which is copied in the opinion. He was carried before the recorder of the city, and upon his trial was discharged. From the judgment discharging the defendant the city council of Montgomery sued out an appeal to the city court of Montgomery in the manner required by the charter of said city (Acts of 1892–93, p. 368, § 64). On the trial of the cause in the city court the following facts were shown: On the 16th day of December, 1895, the city council of Montgomery adopted an ordinance, fixing two as the number of hacks which should be permitted to stand on the west side of Commerce Street in front of the Exchange Hotel, which was duly approved by the mayor of the city of Montgomery on the 20th day of the same month. There is also another ordinance duly adopted by said council and approved by mayor, which provided for the punishment of any person violating said ordinance, by a fine of not less than one nor more than one hundred dollars.—City Code of Montgomery of 1895, § 928. Commerce Street is and has been for more that fifty years a public street or thoroughfare in the city of Montgomery, upon the west side of which is situated the Exchange Hotel, which is leased and operated by one D. P. West. Said West is owner of a line of public hacks, duly licensed by said council and operated by him for the common carriage of passengers in said city, and which are principally and primarily, but not exclusively, for the use of the guests of said hotel. On the 28th day of December, 1895, the defendant, Will Parker, who was the driver of one of the hacks belonging to and operated by said West, drove, stopped and stood his hack on the west side of said Commerce Street, in front of said hotel, at the point designated by said ordinance as a stand for two hacks, when there were, at that time, two other hacks already at said stand, contrary to the provisions of said ordinance. There were other stands for hacks in said city, which were vacant, to which defendant could have driven and stood the hack in his charge, without violating said ordinance, but there was no other stand as convenient to said hotel. At the time the defendant drove and stood said hack in front of said hotel, he was not engaged in the actual carriage of passengers, but did so for the purpose of being convenient to any one who might wish to

employ said hack, but principally and primarily, but not exclusively, for the employment of guests of said hotel. Whereupon the defendant was arrested, tried and convicted, as herein above stated.

Upon this evidence the court was requested by the plaintiff to give the general affirmative charge in its behalf. The court refused to give this charge, and the plaintiff duly excepted. The court, at the request of the defendant, gave the general affirmative charge in his behalf, and to the giving of this charge the plaintiff duly excepted.

There were verdict and judgment for the defendant, discharging him, and from this judgment the city council prosecutes the present appeal, and assigns as error the rulings of the court to which exceptions were reserved.

In the second case, the appellant, D. P. West, filed a bill against the appellees, Brown, Gaston & Haygood; and prayed for an injunction. The facts in reference to this case are sufficiently stated in the opinion.

GRAHAM & STEINER, for the City Council of Montgomery.—Clause three of the charter of the city of Montgomery, as amended February 18th, 1895, gives the City Council of Montgomery police jurisdiction over all the territory embraced in the limits of the city and the territory within one and a half miles of the corporate limits of said city.—Acts 1894-95, p. 628, § 1. The ordinance establishing hack stands is a reasonable regulation, and within the police power of said City Council.—Horr & Bemis on Munic. Ord., § 130; Com. v. Matthews, 122 Mass. 60.

2. A municipal corporation has police jurisdiction over the streets included in the limits of the corporation, whether the fee in the street is vested in the property owner or not.—Horr & Bemis on Munic. Ord., §§ 146, 213, 224, 225, 245, 247; McCain v. State, 62 Ala. 138; Com. v. Matthews, 122 Mass. 60; Western Railway v. A. G. T. R. R. Co., 96 Ala. 272; Com. v. Fenton, 130 Mass. 195.

3. The defendant drove his carriage in front of the Exchange Hotel, on the west side of Commerce street, in the city of Montgomery, and stopped at a point which was designated, by ordinance of the City Council of Montgomery, as a stand for two hacks, when there were

already two hacks upon said stand, in violation of said ordinance, and he should have been convicted. "The power of a municipal corporation to make police regulations includes authority to make reasonable provision for the peace, safety and convenience of its inhabitants." 15 Am. & Eng. Encyc. of Law, 1167, § 3 ; and authorities cited in note on page 1168 under the subdivision of "Use of streets by individuals and vehicles."

GORDON McDONALD, for D. P. West and Will. Parker. 1. For the purpose of this case, West, is an abutting land owner. Presumptively he is the owner of the fee of the street to the middle thereof.—*Perry v. N. O., M. & C. R. R. Co.*, 55 Ala. 413 ; *Western Un. Tel. Co. v. Williams*, 19 Amer. St. Rep. 908 ; *Rice v. Worcester*, 11 Gray (Mass.) 283 ; *Fla. So. R. Co. v. Brown*, 23 Fla. 104 ; *Vaughan v. Stuzaker*, 16 Ind. 338. As such, he has all the rights of any other owner of the freehold, subject only to the public easement.—*Mayor, &c. v. Hill,* 58 Ga. 595 ; *Perry v. N. O., M. & C. R. R. Co.*, 55 Ala. 413.

2. Independently of the ownership of the soil, the occupant of property abutting on a public street, has a right, peculiar to himself, and paramount to other inhabitants of the town, and that is the right or easement of free and unobstructed access to his premises.—*St. Paul, &c., R. Co. v. Schurmier*, 7 Wall. 272 ; *Husner v. Brooklyn*, 114 N. Y. 433 ; *Branahan v. Hotel Co.*, 39 Ohio St. 333, s. c. 48 Amer. Rep. 457 ; *Everett v. Marquett*, 53 Mich. 450 ; *Rigney v. Chicago*, 102 Ill. 64. And the right is so far in the nature of private property that not even the legislature can impair or take it away without compensation.—*Theobold v. Louisville, &c., R. R. Co.*, 66 Miss. 279 ; *State v. Laverack*, 34 N. J. L. 201 ; *Lackland v. v. N. M. R. R. Co.*, 31 Mo. 180 ; *Broome v. N. Y., &c., Tel. Co.*, 42 N. J. Eq. 141.

3. The streets were donated for the travelling public to pass and repass upon. Not for a place to stop on. In New York, where a livery-man left his vehicles in the street in front of the plaintiff's premises, the court held that "The legislature had not the power, and neither had the municipal authorities, as against the adjoining owner to confer upon any person the right to make use of the highway for any other purpose than to pass and

repass.—*McCaffrey v. Smith*, 41 Hun (N. Y.) 117; *Lippincott v. Lasher*, 44 N. J. Eq. 120.

4. The facts disclosed by the bill show the necessity for the preventive jurisdiction of a court of equity. It would be wholly impossible to estimate the damages incurred by complainant in an action at law for tresspass. The remedy at law, for the wrongs complained of, is wholly inadequate. The jurisdiction of it is in equity and by injunction.—*Branahan v. Hotel Co.*, 39 Ohio St. 333; *Ross v. Thompson*, 78 Ind. 90; *Carter v. Chicago*, 57 Ill. 283.

5. The defendant, Will Parker, in the prosecution by the City Council of Montgomery, for the violation of. the ordinance establishing a stand for two hacks in front of the hotel, being in the employment of the proprietor of the hotel, is entitled to the same protection and the same rights in the discharge of his employment, as was the proprietor.

THOS. G. & CHAS. P. JONES, for Brown, Gaston & Haygood.—1. The city of Montgomery had express power to pass the ordinance set out in the answer.—Acts 1894-95, p. 628, amending certain sections of the charter of the city of Montgomery, approved February 18, 1895, section 3. The right to regulate hacks, which included the power to establish hack stands, is given by section 19 of the charter of the city of Montgomery. The same control is given over the use of streets.—Acts, 1892-93, p. 377, § 16. The ordinance is not only authorized, but reasonable.—Horr & Bemis on Munic. Ordinances, §§ 146, 213, 224, 225, 245, 247; *Com. v. Matthews*, 122 Mass.; 60 *McCain v. State*, 62 Ala. 138; *Western R. of Ala. v. Grand Trunk R. R. Co.*, 96 Ala. 272.

2. Even if complainant had the fee to the center of the street, he holds it in subordination to the rights of the public in the street, and the reasonable regulation of it by the municipal authorities. True, the law of the highway is motion; but hacks increase the locomotion over the street. In order to regulate this locomotion, so as to give the best service to the public, and at the same time the least inconvenience to those concerned in the passage of the street, it is necessary that the municipal authorities designate the places on the street, convenient of access to the majority of those who may desire to use

hacks, where hacks must stand, until called by customers. As the stand for the hack when not moving, is essential to the celerity and order in the movement of hacks in the street, the hack stand, in a practical and legal sense, is as much a means of locomotion over the street, as the movement of the hacks, and the hack stand is as much a public use as the movements of the hack. These stands, designated by municipal authority, pursuant to charter power, are in no sense nuisances or unlawful; and do not fall within any of the principles upon which stationary obstacles on the sidewalk, such as fruit stands, goods, booths, etc., are condemned.

3. No authority can be found that a hack stand is *per se* a nuisance. Whether it is so or not, is always a question of fact. The question must be determined by the consideration which governs each particular case. How many hacks are allowed to use the stand at a time? What number of people or crowds resort to the stand to use them? What use is made of his property by the adjacent proprietor, &c.? How does it affect that use or business? Ordinarily, a hack stand for two hacks near a hotel would be considered an advantage to its business and a convenience to its patrons. The same character of hack stand adjacent to a private residence might destroy the comfort and privacy of the occupants, and might be a great evil if maintained near an infirmary, or hospital, or retreat for the sick. The question at last is this: Regardless of the effect on the right of ingress or egress, is the hack stand a nuisance? If not a nuisance in that sense, does it so interfere with and impede the right of ingress or egress, as to amount to a nuisance in that respect? The proof shows that the hack stand here does not fall under either ground of condemnation.

COLEMAN, J.—There is one question involved in each of these cases, the disposition of which determines the former, and may have a material bearing in the other. For this reason but one opinion will be delivered in the two cases.

The City Council of Montgomery adopted two ordinances, the first of which reads as follows: ''Be it ordained by the City Council of Montgomery as follows: That the west side of Commerce Street in front of the Exchange Hotel is hereby established as a stand for two

·hacks." The second ordinance provided for "the punishment of any one guilty of a violation of the ordinance by a fine," &c.

The facts show without conflict that the defendant, Will Parker, violated the above ordinance. The evidence on the part of the defendant showed that at the time of the alleged violation, he, with others, was in the employment, as hack drivers, or common carriers of persons, of the proprietor of the Exchange Hotel, then open and conducted as a public hotel, and that his hacks were kept for the use of his guests as well as for the public use.

In the second case, D. P. West, proprietor of the Exchange Hotel, filed a bill in equity .for the purpose of having respondents enjoined "from keeping or allowing their servants to keep their carriages, hacks and other vehicles on said street and along the sidewalk in front of complainant's hotel,·in the manner above mentioned." We will state, substantially, the facts averred in the bill, upon which appellant bases the prayer for the injunction. First, that he is the owner in fee of the land to the centre of the street; that, for the purpose of carrying on his business, he ·is compelled to run a number of carriages and baggage wagons to carry his guests, the travelling public, and their baggage to and from the hotel, and that respondents have kept and continue to keep "their various hacks, carriages, or many of them, on said Commerce street, along the edge of the sidewalk, in front of complainant's hotel, as a usual and customary stand for them to await employment, to the great loss and annoyance of appellant in his said business, preventing and obstructing him and the guests of his said hotel in their reasonable access to and egress from said hotel, and obstructing and preventing the transportation of the baggage of the said guests to and from the said hotel, and crowding and keeping carriages and baggage wagons away from the front of said hotel, where it is necessary for the comfort and convenience of complainant's guests the said carriages and wagons should be kept; * * * and by reason of .the wrongful conduct of respondents he is greatly hindered, hampered, harrassed and injured in his business of running his said hotel." A temporary injunction issued. Some of the respondents (appellees) answered the bill, and by

consent of parties the cause was set down for hearing upon motion to dissolve the injunction. At the hearing, the chancellor decreed a dissolution of the injunction, from which decree the complainant appealed, and here assigns the decree dissolving the injunction for error.

The wrong complained of by complainant in his bill, and for which he seeks redress and relief principally, is one which affects his personal business. The provisions of the city ordinances are within the terms of the power conferred by the legislature in the city charter. We declare the law to be, that when a part of a freehold becomes in fact a public highway or public street of a city, whether effected by dedication or conveyance of the owner, the State, in its sovereignty over all public highways and public places, has full police power to regulate the actions of all persons in their use of them, and the manner of their use, not inconsistent with their use as public streets or highways, and to make such alterations from time to time as the State may deem proper; and we further hold, that the dedicator or grantor has no greater right or interest in the use of a street or public highway, as such, and the manner of its use, than any other person of the public.—*Perry v. New Orleans &c., R. R. Co.,* 55 Ala. 413, and authorities; Elliott on Roads and Streets, p. 662.

It has been frequently decided, and we hold correctly decided, that the State may confer or delegate the same supervision and control over streets of a city to the municipality itself in which they are located.—Authorities *supra*; *Brook v. Horton,* 68 Cal. 554; *Pollack v. Trustees, &c.,* 48 Cal. 490; *McCain v. The State,* 62 Ala. 138.

We find nothing in these ordinances of the city in question, which show that the city council, by their adoption, exceeded the power conferred in its charter by the legislature, nor is there any provision contained in the ordinance, nor is there any evidence in the record of the case of *The City Council v. Will Parker,* which would authorize the conclusion that the ordinances are unreasonable. It follows from the principles of law declared to be applicable, that the defendant, Will Parker, prosecuted for a violation of the ordinance, and the complainant in the injunction suit, can not claim any immunity, nor derive any special privilege or benefit from the fact that the proprietor of the hotel owns the fee in the street, sub-

ject only to the easement. Their right must be determined without regard to this fact. It is not seriously controverted that Will Parker violated the ordinance of the city. He should have been convicted under the evidence.

The proprietor of the Exchange Hotel has no more right to permanently occupy the street adjacent to the sidewalk in front of the hotel with his hacks, than any other person, nor are his guests entitled to any greater consideration in the use of the sidewalks and streets of the city, because they are guests. The public, in these respects, are upon an equal footing. The complainant's bill, however, charges facts which, if true, show that the respondents occupy the street in front of the hotel in a manner not authorized by the city ordinances, but in a way the city ordinance, no doubt, was intended to prevent, and thereby "prevents and obstructs him and the guests of the hotel, in the reasonable access to and egress from the hotel, and in the transportation of baggage, to their great inconvenience and to his injury." These averments, and there may be others of a similar character, in our opinion, gave the bill equity, and, if proven, would entitle the complainant to relief. The answer of the respondents positively and explicitly denies every allegation of fact, made by the complainant, which gives equity to the bill, and which must be established to entitle complainant to relief.

There are affirmative averments in the answer of respondents, and which are discussed in the brief of counsel. We do not consider these, in reviewing the decree of the court dissolving the injunction upon the answer.—*Birmingham Mineral R. R. Co. v. Bessemer*, 98 Ala. 277, and cases cited.

We are of opinion the decree is fully sustained upon the general rule stated in the foregoing authority.

The first case, that of the *City Council v. Will Parker*, is reversed and remanded.

The second case, *West v. Brown et al.*, is affirmed.