FLORIDA CENTRAL AND PENINSULAR RAILROAD COM-
PANY, APPELLANT, VS. THE OCALA STREET AND
SUBURBAN RAILROAD COMPANY, APPELLEE.

1. The powers of a municipal corporation over its public streets are held in trust for the public benefit, and can not, in the absence of clearly delegated authority, be surrendered or delegated by contract to private parties, either corporate or natural.

2. The well established rule is that a municipal corporation can exercise only such powers as are granted to it in express terms, or those necessarily or fairly implied in or incident to the powers expressly granted, or those that are essential and indispensable, not simply convenient, to accomplish the objects and purposes of the corporation.

3. The powers conferred upon cities and towns by the general act, section 17, page 248, McClellan's Digest, to regulate, improve, alter, extend and open streets, lanes and avenues, and to cause encroachments and obstructions, decayed buildings and ruins to be removed, did not authorize the municipal corporation of the city of Ocala to vest, by contract, in a street railway corporation an exclusive right to construct railroad tracks on all the streets of the city as then laid out, or that might hereafter be laid out, for a period of ten years.

4. A public street of a city can not be destroyed even in part by the municipality unless the authority to do so is conferred in express terms, or by necessary implication.

5. Under the powers conferred by statute, section 17, page 248, McClellan's Digest, a municipality can alter a street by abandoning a portion of it when done in the reasonable exercise of such authority for the public good.

Appeal from the Circuit Court for Marion county.

STATEMENT.

The bill in this case was filed by appellee, as complainant, against appellant, as defendant. It alleges that complainant was incorporated for the purpose of operating and maintaing a street railroad in and near the city of Ocala, Florida, and that thereafter, in September, 1889, by an ordinance of the city of Ocala, a copy of which was attached to and made a part of the bill as exhibit "A," complainant was authorized and empowered to build, maintain and operate a line of railroad in, through, over and upon all the streets, lanes and alleys of said city, as the same were at that time laid out, and upon all such streets, lanes and alleys as might thereafter be opened for a period of ten years from the 18th day of September, 1889; that complainant accepted the terms and conditions of such ordinance and then constructed a line of railroad along and over Magnolia and North Sixth streets in said city from the public square to the passenger station occupied by defendant in said city, and situated on North Sixth street, just west of the northern end of Magnolia street, and since the — day of November, 1889, has continuously operated said line of street railroad for carrying passengers to and from said station; that on the — day of May, 1891, said passenger station of defendant was destroyed by fire and a new passenger station was afterwards erected by defendant at a point about twenty-five or thirty yards to the eastward of the former location, in and upon the northern end of Magnolia street; that in order to obtain permission of the city of Ocala to erect said passenger station upon the public street of the city, the defendant applied to the Common Council of said city and thereupon on the

4th day of August, 1891, an ordinance was passed which purports to convey the fee of the land over which Magnolia street had been laid out to defendant, and that since the passage of said ordinance the defendant has set up a claim, to the exclusion of complainant and the public generally, to all that portion of Magnolia street which lies north of North Sixth street. A copy of this ordinance is attached to and made a part of the bill as exhibit "B."

Further, that in order to carry on its said business of transporting passengers along and over the streets of said city, and in order to maintain said business, it is necessary that complainant's lines of rails be laid within a reasonable distance from the passenger station of defendant, and that after the destruction of the former passenger station used by defendant, and after the erection of the new passenger station upon the north end of Magnolia street, complainant changed the line of the road which ran to and from the former location of defendant's station, and laid the same over a portion of Magnolia street lying north of North Sixth street, so that it might with ease and facility carry on its business of transporting passengers to and from said railroad station, and that said line was changed from the old location of defendant's station to the new station on or about the 17th day of September, 1892, and since that time complainant has been in actual, open and notorious possession of that portion of Magnolia street lying north of North Sixth street covered by complainant's line of road, and since that time has continuously operated that portion of its line of road which reaches from North Sixth street to defendant's passenger station; that by its acceptance of the terms and conditions of the ordinance conferring upon com-

plainant the right to operate and maintain its line of railroad upon all the streets, lanes and alleys in the city, it acquired a vested contract right to build, maintain and operate its line of road over that portion of Magnolia street to which it now claims title, long prior to the passage of the ordinance under which defendant claims title; and further, the said ordinance which purports to convey the title to a public street in the city for the private use and benefit of defendant is without authority of law, null and void.

The bill further alleges that the defendant had tried to induce complainant to recognize the former's asserted rights of property in Magnolia street and that negotiations in reference to a lease of the property had taken place between them, but without consummation, the details of which we do not deem necessary to state.

It is also alleged that defendant had notified complainant to immediately remove its said line of railroad from the tract of land to which defendant claims title, and that if said line of road was not removed it would remove the same by force; and that unless restrained defendant would by force tear up and remove complainant's line of road from said tract of land; that complainant would be greatly damaged by the tearing up of its said line of road, and its business of carrying passengers to and from the station of defendant would be greatly injured, and the same would be and continue to be a hindrance to its business, and defendant could not be required to respond in damages by a suit at law in a sum adequate to compensate complainant for the consequent loss of traffic which would result from the destruction of its property.

The prayer is that defendant be enjoined from en-

tering upon complainant's line of road lying on Magnolia street north of North 6th street in said city, and from tearing up and removing any portion of the same, and that the ordinance under which defendant sets up a claim of title to said portion of Magnolia street be declared to be void and of no effect, in so far as the same purports to convey the title to that portion of Magnolia street lying north of North 6th street, and in so far as the same restricts the rights of complainant and the public generally to use and occupy said portion of Magnolia street as a public thoroughfare.

The ordinances marked exhibits "A" and "B," and made a part of the bill are as follows:

EXHIBIT "A."

Be it ordained by the Mayor and the Aldermen of the city of Ocala.

Section 1. That the Ocala Street and Suburban Railway Company a corporation organized and existing under the laws of the State of Florida its successors and assigns, be and it is hereby granted the exclusive right of way through all the streets, lanes and alleys of the city of Ocala, as at present laid out and hereafter to be opened for a period of ten years, for the purpose of building and maintaining lines of street railway and operating the same by horse-power, steam, cable or electricity as it may deem the most convenient and practicable; such grant of the right of way and the right to build, maintain and operate said lines of railway to be subject to the provisions to be hereinafter set forth.

Sec. 2. That the right of way above granted shall not attach or become vested in said Ocala Street and

Suburban Railway Company unless it shall begin the work of constructing said lines of railway in good faith within sixty days from the passage or this ordinance, and prosecute the same with reasonable diligence from time to time, and unless said Ocala Street and Suburban Railway Company shall within six months from date of passage of this ordinance complete and have in active operation some portion of said lines of railway not less than one mile in extent.

Sec. 3. Said lines of street railway shall be constructed on a level with the present grade of the streets except where grading may be absolutely necessary, and must be so constructed so as not to impede travel or obstruct the ordinary use of the streets, and shall be constructed of steel or iron rails of weight and size usual in the construction of street railways.

Sec. 4. From and after the passage of this ordinance said Ocala Street and Suburban Railway Company shall have the exclusive right of way upon all such parts of such streets, lanes and alleys of said city as aforesaid, upon which a portion of their lines shall have been built and actually operated for a period of ten years after the passage of this ordinance. Whenever any person, company or corporation other than said Ocala Street and Suburban Railway Company shall desire to build a line of road upon any of the streets, lanes and alleys of said city upon which said Ocala Street and Suburban Railway Company may not then already have built, and shall deposit to the credit of the city of Ocala in some solvent banking house of said city a sum of money not less than five hundred dollars as a forfeit to said city in the event of their actual *bona fide* work upon such line or lines shall not be begun within sixty days from the date of

such application, it shall be the duty of the clerk of the board of aldermen of said city of Ocala to give immediate notice in writing to the president of said Ocala Street and Suburban Railway Company that such application has been made, and the sum of money, not less than five hundred dollars, aforesaid by said company, person or corporation deposited as aforesaid, then and in that event it, the said Ocala Street and Suburban Railway Company, within sixty days from the date of said notice so given by the clerk of the board of aldermen aforesaid shall begin the construction of a line or lines of street railway in good faith upon the street or streets, lane or lanes, alley or alleys, and prosecute the same with reasonable diligence, which are designated in said application of said person, company or corporation, the exclusive rights and privileges above recited shall immediately inure to and vest in the Ocala Street and Suburban Railway Company to any and all streets, lanes or alleys, or parts thereof, upon which and after notice and within sixty days actual *bona fide* work shall have been commenced by it and shall be continued to completion.

SEC. 5. The rights, privileges and franchises above granted shall attach and inure to the Ocala Street and Suburban Railway Company immediately upon the passage hereof, upon the condition, however, that the said Ocala Street and Suburban Railway Company shall deposit in a solvent banking house in Ocala, Florida, in the sum of five hundred dollars as a forfeit to the city of Ocala in case said corporation shall not in good faith begin construction of said railway within sixty days, and said forfeit of five hundred dollars to remain upon deposit until it is shown to the satisfaction of street committee that said company have ex-

pended in the construction of said railway lines at least five hundred dollars.

All ordinances and parts of ordinances in conflict with the provisions of this ordinance are hereby repealed.

### EXHIBIT "B."

Be it ordained by the City Council of the city of Ocala in council assembled:

That, recognizing the justice of extending to the Florida Central and Peninsular Railroad Company such reasonable and just privileges as the pursuit of their business may require, at and near the freight and passenger depots in this city, not immediately in conflict with the rights of private citizens, nor the rights of the public: That to the said railroad company, its successors and assigns be granted forever the general right of way over and upon that part of North Sixth street between the east side of Magnolia and the east side of Pond street, with the right to maintain its track and side tracks, as may appear expedient, at the west end of North Sixth street, but east of Pond street, with also the right to erect a warehouse south of the main line in conformity with the curve of the main line, which may on account of said curve extend or project at an angle into the said North Sixth street, and at the southwest corner of said warehouse not over ten feet at the extreme point of extension into said street, and that the said railroad company shall have the rights, uses and benefits of said street as above described for general yard purposes, without any right to enclose the same, or otherwise stop or hinder the public from using, said using by the public not to be in conflict with rights

and privileges above granted to the said railroad, it being specially conditioned that said rights, grants and privileges shall apply specifically to the point where Orange and Lime streets cross said North Sixth street, and that Magnolia street be abandoned at the north side of said North Sixth street.

The foregoing all conditioned that the said railroad company shall without cost to the city extend said North Sixth street east to the street recently given by the said railroad company to the city off the east side of fractional lots twenty and twenty-one of the new survey north of said city (along and parellel with section line dividing sections seventeen and eighteen in township fifteen south of range twenty-two east, as per conveyance from Calvin J. Allred and Enoch W. Agnew to said railroad), and also further conditioned that the said railroad company shall construct and maintain suitable freight and passenger warehouse, or ware-houses, depot or depots, in accordance with plans and specifications recently exhibited by Capt. D. E. Maxwell, general manager of said railroad company, to a special committee from the council (said committee composed of Messrs. Wm. Fox and G. A. Carmichael) said buildings as per said plans and specifications to be erected by or before January first, A. D. eighteen hundred and ninety-two.

Be it further ordained that the said railroad company or its proper representatives shall be furnished with a true copy of this ordinance duly certified, which shall be a legal and proper conveyance to the said railroad company of the above rights and privileges.

The bill was sworn to by the president of the complainant company before the solicitor signing the bill,

and a temporary injunction was granted to continue until the further order of the court.

An answer in connection with a demurrer was filed by defendant, grounds of the demurrer, among others being as follows; Want of equity in the bill.

The bill and exhibits show that complainant has no right to run its railroad track upon the abandoned street, and its occupation of the same has only been since the abandonment. Complainant's right never vested by the occupation of said street before the city abandoned it. The bill and exhibits show a total abandonment of the portion of said street by the city, and the right of defendant to use it as a railroad yard for general yard purposes, and show no right in complainant to place its railroad track thereon. It is not necessary to state the allegations of the answer.

A motion to dissolve the injunction upon grounds stated on bill, answer, demurrer and affidavits was denied and the demurrer was also overruled. The present appeal is from the orders made.

The other facts in the case are stated in the opinion of the court.

*John A. Henderson* and *Hugh F. Miller*, for Appellant.

*R. L. Anderson*, for Appellee.

The cause is here upon an appeal from an interlocutory order of the chancellor below, overruling the demurrer to the bill and continuing the temporary injunction until final hearing.

Act of November 7, 1828, sec. 18 (Rev. Stat. sec. 1416) provides that an answer or other paper in chan-

cery may be sworn to before any officer authorized to administer oaths. Chapter 48, sec. 1, act of 1845 (Rev. Stat. sec. 1299) designates such officers as may take oaths in all cases to be circuit judges, judges of probate, justices of the peace, and notaries public. The bill in this case was sworn to before R. L. Anderson, a notary public; and the ancient practice in chancery has been changed by the statutes above cited.

The second ground of the motion to dissolve was that there was no equity in the bill. It is contended by appellant that a municipal corporation in this State has full power to vacate and abandon its streets under legislative authority, and that such authority has been granted to towns and cities in this State by McClellan's Digest page 248, sec. 17. It is a fundamental principle that the powers of a municipal corporation in respect to the control of its streets are held in trust for the benefit of the public, and can not, unless clearly authorized by a valid legislative enactment, be surrendered or delivered up by contract to private persons or other corporations. (2d Dill. Mun. Corp. 4th ed. sec. 716. Des Moines Street R. R. vs. Des Moines Broad Guage Street R. R. 73 Ohio 513. 32 Am. & Eng. R. R. Cas. 209. 10 Wall, U. S., 38). McClellan's Digest page 248 sec. 17 is not such legislative enactment as will authorize a municipal corporation to vacate or abandan a public highway to the use and benefit of a private corporation, and the ordinance granting, or purporting to grant, any rights whatever to that portion of Magnolia street north of North 6th street to the appellant is ultra vires and void. The delegation of authority by the Legislature to municipal corporations must be in express terms or by nec-

essary implication, and the construction of ambiguous words alleged to confer it ought to be in favor of the common right of highway; and, in no event can a highway once dedicated to the public use be discontinued for the purpose of devoting it to private and inconsistent uses. (Elliot on Roads & Streets, page 661; 87th Mo. 678; 9th Mo. 483; 22d Iowa 351; 37th Ind. 489; 7th Ohio State, part 1st, 217, S. C. 28 Am. Dec. 641; 20th Fed. Rep. 586). "Once a highway always a highway" is a maxim of the common law, and so far as the doctrine concerns the rights of abbutters or others occupying a similar position who have lawfully and in good faith invested money or obtained property interests in the just expectation of the continuance of the highway the maxim still holds good. Not even the Legislature can take away such rights without compensation. (Elliott on Roads & Streets p. 658). And whether or not the appellee had in fact constructed that portion of its line north of North 6th street prior to the passage of the ordinance under which the appellant claims the fee of the land can not avail the appellant in this cause for so far as the rights of the appellee in Magnolia street north of North Sixth street are concerned the ordinance is void. The bill shows that the appellee had constructed its line of road, with the exception of that portion thereof lying north of North Sixth street, a distance of sixty or seventy feet, under an ordinance adopted by the City Council of the city of Ocala prior to the passage of the ordinance under which the appellant claims, and that the prior ordinance being in effect not a mere license but a contract between the city of Ocala and the appellee it was not competent for the city of Ocala by a subsequent ordinance to alter or change the rights or

position of the appellee which were acquired by the prior ordinance. The appellee is a corporation with franchise to construct and operate a street railroad upon all the streets, lanes and alleys of the city of Ocala. This franchise, as soon as accepted, creates a contract right which can not be divested by subsequent legislation. (Dartmouth College Case, and authorities thereunder cited. Chapter 2 Beach on Private Corp). The acceptance of a franchise creates an estate in fee in the street to the extent necessary for railroad purposes. (People vs. O'Brien, 26 Am. and Eng. R. R. Cas. p. 78). A right in the street once acquired is property, and can not be taken away from the owner without due process of law. (Beach on Private Corp. Secs. 834–839).

Injunction will lie to enjoin a continuing trespass. The bill alleges that the appellee "will be greatly damaged by such tearing up and removal of its line of railroad; that its business of carrying passengers to and from the station of the defendant will be greatly injured thereby, and that the same would be, and continue to be, a hindrance to and prevention of your orator's business, and that the defendant could not be required to respond in damages by a suit at law in a sum adequate to compensate your orator for the consequent loss of traffic which would result from the destruction of its property by the defendant." The demurrer of the defendant to the bill admits this allegation, and its answer does not deny it. (High on Injunction, chapter "Trespass"). The bill alleges that the defendant has and will continue to prevent the exercise of the complainant's franchise. Courts of equity will protect the exercise and enjoyment of a franchise. (High on Inj. "Protection of Franchises." 1st C. E.

JANUARY TERM, 1897.	319

F. C. & P. R. R. Co. v. Ocala Street & Sub. R. R. Co.—Opinion.

Green, N. J. Eq., Delaware R. R. vs. Camden R. R. 1st Stewart N. J. Eq., 537. 14th Stewart, N. J. Eq., 493). Will interfere before the complainant's right is established by law. (High on Inj. 571). Injunction will lie to restrain the unauthorized use of a public street. (High Sec. 40'). Injunction will lie to prevent the illegal vacation of a street. (Elliot on Roads and Streets, page 665, and authorities in note one thereunder). Injunction will lie where damages are not alleged to be irreparable, where an injury apprehended is alleged to be a continuing one, and to avoid a multiplicity of suits. (Stevenson vs. Mayor, 20th Fed. Rep. page 586). The appellant does not claim as an abbutter, nor as reversioner of the fee.

A well defined branch of equity jurisdiction is that of injunction for the protection of easements, and the ordinance under which the appellant here claims any right having been shown to be ultra vires and void, and the vacation of the street illegal, a court of chancery has jurisdiction to protect the appellee in the exercise of its right of easement over the disputed territory. This right is a franchise right, and is incident to and a part of the franchise of the appellee. A violation and invasion of the franchise is not a naked trespass, and the record shows that the acts complained of are and constitute a violation of the appellee's franchise. (High on Injunction chapter on "Roads and Highways," and authorities thereunder cited).

MABRY J.:

There is no plat accompanying the bill filed in this case showing the definite location of the streets of the *locus in quo*, but from the allegations in the bill it ap-

pears that the track of the appellee company was laid in Magnolia street from the public square north to North Sixth street, and then deflected westward on the latter street to the old station of the appellant company, situated just west of the northern end of Magnolia street. From the entire bill it is clearly shown that the street railroad company did not occupy any portion of Magnolia street north of North Sixth street before the ordinance of August 4, 1891, indicated by exhibit "B" in the statement, was passed. The bill does not base appellee's right to occupy the portion of Magnolia street north of North Sixth street upon a location of any line there before the passage of the ordinance of August 4, 1891, but the theory is that by the acceptance of the terms and conditions of the ordinance of September, 1889, shown by exhibit "A" in the statement, it required an exclusive vested contract right to build, maintain and operate its line of road upon all the streets, lanes and alleys in the city of Ocala as then laid out, or thereafter to be opened, for a period of ten years. It is true, we think, that the ordinance of September, 1889, does undertake to vest in appellee such a right, but we do not see that the municipal corporation of Ocala had authority to confer it upon appellee. The correct view is that the powers of a municipal corporation "in respect to the control of its streets are held in trust for the public benefit, and can not, unless clearly authorized by a valid legislative enactment, be surrendered or delegated by contract to private parties, either corporate or natural." 2 Dillon's Municipal Corporation (4th Ed.), sec. 716; Davis vs. Mayor, etc., of New York, 14 N. Y. 506, S. C. 67 Am. Dec. 186; Birmingham & Pratt Mines Street Railway Co. vs. Birmingham Street Ry.

Co., 79 Ala. 465; Jackson Co. Horse R. Co. vs. Inter-
state R. T. Ry. Co., 24 Fed. Rep. 306. The powers
conferred upon municipal corporations in this respect
and contained in the general law for the incorporation
of cities and towns (sec. 17, page 248, McClellan's Di-
gest) are as follows: "The city or town council shall
have power to regulate, improve, alter, extend and
open streets, lanes and avenues, to cause encroach-
ments and obstructions, decayed buildings and ruins
to be removed; to construct drains and sewers, and
make to the parties injured thereby such reasonable
compensation, and charge upon those benefited such
reasonable assessments as may be agreed upon by the
said council and the said party or parties, and in case
no such agreement can be made, then the council shall
appoint five discreet persons, holders of real estate in
said city or town, to ascertain and fix on the one hand
a fair, equitable assessment, and on the other a just
compensation, and that the said assessment shall be
a lien on the real estate improved and assessed,
and that every person who enters his particular
drain into the main chain, or common sewer and
receives a benefit thereby from draining his land, shall
pay to the city or town his proportional part of mak-
ing or repairing the same." We discover no author-
ity in this provision for the municipality to surrender
its control over the streets of the city, or to tie up its
hands by an exclusive contract so as to preclude a sub-
sequent council from exercising the trust vested in it
over the streets for the benefit of the public. The
general rule is that a municipal corporation can exer-
cise only such powers as are granted to it in express
terms, or those necessarily or fairly implied in or in-

cident to the powers expressly granted, or those that are essential and indispensable not simply convenient, to the declared objects and purposes of the corporation. Jacksonville Electric Light Co. vs. City of Jacksonville, 36 Fla. 229, 18 South. Rep. 677. While the ordinance under which appellee claims does undertake to vest in it the exclusive right to construct railroad tracks on all the streets of the city of Ocala as then laid out, or that might be opened for a period of ten years thereafter, we are of the opinion that it is void so far as such exclusive rights are concerned on account of an absent of power in the municipality to confer them, and that it was within the power of a subsequent city council to exercise such control and regulation over the streets as conferred by statute. The bill, including the exhibits made a part thereof, shows that the city council by ordinance abandoned the north end of Magnolia street north of North Sixth street before appellee laid any track thereon, and appellee's right on this part of the street as formerly laid out is based upon its alleged vested contract right under the ordinance in its behalf. If the city had authorty to abandon the part of the street in question and thereby divest it of the character of a city highway we do not discover any right of appellee to penetrate it with its railroad track. The authority conferred upon the city in reference to the abandonment of streets is that contained in the section already quoted, to "regulate, improve, alter, extend and open streets, lanes and avenues." The rule of construction already applied should be kept in mind, and a public street of a city can not be destroyed, even in part, unless the authority to do so is conferred in express terms, or by necessary implication. Hoboken Land

& Imp. Co. vs. Mayor, etc., 36 N. J. L. 540; Mayor and Aldermen of Jersey City vs. Central R. R. Co. of New Jersey, 40 N. J. Eq. 417; Mayor and Council of Newark vs. Delaware, L. & W. R. R. Co., 42 N. J. Eq. 196, 7 Atl. Rep. 123. It was held in Brook vs. Horton, 68 Cal. 554, 10 Pac. Rep. 204, that an alteration by competent authority of an existing road or way is a discontinuance of those portions of the way which do not come within the newly assigned limits although no special order of discontinuance is made. Decisions in Massachusetts hold that the establishing of an alteration in a highway is in law a discontinuance of the part not included in the alteration. Commonwealth vs. Inhabitants of Westborough, 3 Mass. 406; Commonwealth vs. Inhabitants of Cambridge, 7 Mass. 157; Bowley vs. Walker, 8 Allen 21.

Express power to alter streets is conferred upon municipal corporations by the provision of the statute mentioned, and, in our judgment, a municipality can alter a street by abandoning a portion of it when done in the reasonable exercise of the powers conferred for the public benefit. The bill in the present case alleges that the ordinance of August 4, 1891, purports to convey the fee of the land over which Magnolia street had been laid out to appellant, and since that date it had set up an exclusive claim to the portion of said street north of North Sixth street. The ordinance does not undertake to convey to appellant the fee to any portion of Magnolia or North Sixth streets; Portland & W. V. R. R. Co. vs. City of Portland, 14 Oregon, 188, 12 Pac. Rep. 265; nor does it, in terms, undertake to confer any rights or privileges whatever on appellant in the portion of Magnolia street north of North Sixth street. That portion of the street is abandoned, and

the privileges granted as to laying tracks and yard purposes are confined to North Sixth street. Some clear legal right must be shown in order to success-fully invoke the injunctional powers of the court, and appellee's sole right to penetrate the abandoned por-tion of Magnolia street is based upon its asserted vested right under the ordinance of September, 1889, and we have already seen that no such right can be claimed under that ordinance. The result is that the bill fails to show any sufficient ground for the relief prayed in favor of appellee, and the demurrer should have been sustained. It is proper to state in reaching this conclusion that no question is presented as to the rights of abutting property owners in the abandoned portion of the street, nor, as against the alleged vested right of appellee under the ordinance, is there any question of abuse or wrong exercise of power in alter-ing the street, and nothing is decided as to such mat-ters. In Gray vs. Iowa Land Co., 26 Iowa, 387, it was decided that a municipality could, under a delegated power to vacate streets, rightfully order the vacation of a street, and the exercise of such power, when dis-creetly exercised and with due regard to individual rights, would not be restrained at the instance of a citizen claiming that, as a land owner, he was inter-ested in keeping open the public streets.

In McGee's appeal, 114 Penn. St. 470, 8 Atl. Rep. 237, it was held that an injunction will not be granted to restrain a railroad company from destroying a bridge, a part of a public street which a municipality, by a contract with said company, under an act of the Legislature, had agreed to vacate, because the street had not been vacated by a formal ordinance of the

council of said municipality, as equity considers that as done which ought to have been done.

The propriety of swearing to a bill before the solicitor signing the same is involved by the discussion here, but it is not necessary to decide it now, and it may not arise again.

The decree overruling the demurrer to the bill is reversed, the cause remanded with directions to sustain the demurrer and dissolve the injunction, with leave to appellee to amend, and apply for an injunction, if deemed proper to do so.    Order to be entered accordingly.