Case 68—PETITION EQUITY—January 23.

# City of Newport v. Newport Light Company.

APPEAL FROM CAMPBELL CHANCERY COURT.

1. Power of City to Contract for Electric Lights.—The provision in the charter of a light company authorizing it to furnish any city with gas, "or other light," upon such terms as may be agreed upon by the parties, is sufficient to empower any city which has, by its

City of Newport v. Newport Light Company.

charter, the general power to contract, to make a contract with the light company to furnish the city with electric lights.

**2. CONSTRUCTION OF CONTRACT BETWEEN CITY AND LIGHT COMPANY.—** A contract between a city and the light company granting to the latter the exclusive use of the streets for a term of years, for the purpose of laying pipes to supply gas to the city, and providing that the company may adopt any other mode equal to gas for supplying light to the city and its inhabitants, provided the same shall be done at no greater cost to the city than the gas light, does not give to the light company the right to use the streets of the city for the erection of appliances necessary for the introduction of electric lights. In case of the introduction of a light other than gas requiring a different use of the streets, the consent of the city to such new use is necessary.

**CHAS. J. HELM FOR APPELLANT.**

1. The right to use the streets of a city by a light company for lighting the city in any way is a franchise that can be granted only by the Legislature, or some local or municipal authority authorized to confer it. (City of Newport v. Newport Light Co., 84 Ky., 176.)

2. The appellee has no legislative authority, direct or indirect, to enter on the streets of the appellant to erect poles for any purpose. But, conceding that it has power so to do, the allegation of terms of the contract do not show a grant of power to use the streets for any other purpose than supplying gas.

3. The city of Newport must, in either the act incorporating the appellee, or in its own charter, have the power conferred on it to contract for electric light, else the contract is void to that extent. The provision in appellee's charter, conferring upon it the right to furnish any city, town or district " with gas or other light " upon such terms as may be agreed upon by the parties, does not confer upon appellant the power to contract for such lights. (Phillips v. Cov. and Cin. Bridge Co., 2 Met., 222.)

**E. W. HAWKINS ON SAME SIDE.**

1. The right of a light company to use the streets of a city is a franchise that can be granted only by the Legislature, or some local or municipal authority authorized to confer it. (City of Newport v. Newport Light Co., 84 Ky.; 2 Dillon on Mun. Corp., sec. 691.)

2. Such grants as that claimed by plaintiff are to be restricted rather than enlarged by construction, and are to be strictly construed and closely pursued. (Dillon, sec. 89; 7 Bush, 603; 11 Bush, 532; 14 Bush, 312; 11 Peters, 420; 27 N. Y., 87; 21 Pa., 22.)

3. Even if plaintiff were allowed to rely on implication, a grant to construct gas-works could not authorize the construction of electric light works.

4. The ordinance itself does not authorize the contemplated electric works. The "other mode" referred to could not have had reference to electric light, for at the time of the making of the contract (June 3, 1880), electric light was not used in any city in the country for lighting its streets. Besides, many conditions of the contract are inconsistent with the idea that electric light could have been intended.

J. G. CARLISLE AND NELSON & DESHA FOR APPELLEE IN PETITION FOR REHEARING.

Brief not in record.

1. In view of the contract of June 3, 1880, the city can not, by tearing down the appellee's poles, or otherwise, absolutely prohibit the appellee from using the streets. If the health, comfort or convenience of the people require it, the city may compel the appellee to use the streets only in a certain prescribed manner. It has not made any such regulation, but seeks to repudiate the contract entirely. This it can not be permitted to do. (New Orleans Gas. Co. v. Louisiana Gas Co., 115 U. S., 669.)

2. This court has decided that the appellee had a right, under the contract of June 3, 1880, to supply the city and its inhabitants with light and electricity; and, of course, this necessarily includes the right to use the streets, alleys, &c., in such reasonable and safe manner as may be essential to the enjoyment of the privileges granted. Whether the poles and wires in controversy do or do not endanger life or property, or obstruct the streets, is purely a question of fact, and can not be decided on demurrer.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This action was brought by the appellee, the Newport Light Company, to enjoin the appellant, the City of Newport, from removing poles erected by the company upon the streets of the city, and upon which it has stretched wires for electric illuminating purposes. It claims the right to so use the streets under a contract with the city for lighting it. It is denied that the terms of the contract embrace such a use, and if so, then the power of the city to make it is denied.

The appellee, the Light Company, by its charter,.

enacted March 27, 1880, was authorized to "furnish any city, town, district, corporation or locality, or any public institution, manufacturing establishment, or private premises with gas or other light for such time and upon such terms as may be agreed upon by the parties." The charter of the appellant, the City of Newport, merely provides, however, that its board of councilmen shall have power "to construct, main-tain and operate gas and water-works, and to pass all ordinances necessary to regulate. the same, provided that no existing contract shall be affected thereby."

It was held by this court in the case of the City of Newport v. Newport Light Company, 84 Ky., 166, that where a municipal corporation has the power by leg-islative grant to maintain gas-works in order to fulfill its duty of lighting its streets and furnishing its in-habitants with the means of obtaining gas at their own expense, it has the implied power to contract with others to do so. This rule is not now ques-tioned, but it is insisted that, as the city charter au-thorizes the construction and operation of *gas*-works only, the city had no power to contract for the electri-cal lighting of its streets. The Legislature had, how-ever, by the company's charter, declared that it might "furnish any city * * * with gas *or other light* for such time and upon such terms as may be agreed upon by the parties." This, in view of the fact that the city charter gives to it the power to contract, author-ized a contract between these parties as to lighting the city by gas, electricity or any other mode. The city drew its power to make the contract for this partic-ular purpose from the act incorporating the Light

Company. (Phillips v. Cov. & Cin. Bridge Co., 2 Met., 219.) The city, however, has control of its streets 'and public thoroughfares, and the inquiry arises, has it consented to or entered into a contract with the appellee, which gives the latter the right to use them for the erection of electrical illuminating appliances.

The first section of the city ordinance evidencing the contract gives to the company for twenty-five years the exclusive privilege of "using any or all of the streets, lanes, commons, alleys, and public places of the city for the purpose of laying pipes to convey and supply gas to the said city of Newport and others," and the only use of the streets named in the entire ordinance is for gas apparatus and fixtures. The seventh section, however, reads thus: "Said company or their successors may adopt any other mode equal to gas for supplying light to the city and its inhabitants, &c., provided the same shall be done at no greater cost or expense to the city or consumers than the gas light."

It is claimed that by virtue of this provision the right is to be implied in favor of the company to use the streets in any manner necessary to the introduction of any other light than gas. It is true that, as a general rule, where the power is given to do a thing, the right to the exercise of the means necessary to the end is implied without further consent or grant. This case does not, however, in our opinion, fall within the rule. The parties to the contract can not reasonably be supposed to have so intended. The right to the use of the streets, now contended for, is not a natural one. It is a franchise, which is a priv-

ilege that must emanate from legislative power. It is a special privilege in derogation of common right, and with which persons generally are not invested. Its exercise may, and likely will, affect the convenience and business of the general public. The interests of the city are involved. Its commerce and general prosperity are in question. In such a case, therefore, it should not be presumed the city intended, or that the parties contemplated, that the control of the streets was surrendered *ad libitum* to the Light Company for lighting purposes, and that the city was to have no further voice in the matter, however much the use might be likely to affect the convenience and business of its people. Concede that when a municipality, under legislative authority, grants to a party the exclusive right to supply it with gas or other light, it does not part with the police power of protecting the health and morals of its people, and the public safety, for the reason that it can not bargain away this duty, and that the grant is still subject to this power to the extent named; yet franchises of such a sweeping character should not be presumed. Grants, like the one claimed, should be expressed in unambiguous terms, and the municipality should not be deprived of the power of regulation in a doubtful case. It would, in an important degree, be a transfer to the Light Company of its corporate powers and duties, and, in a certain sense, a destruction *pro tanto* of the police power of the city government. It can not fairly be supposed that the parties intended, in providing that the company might furnish any other light, which might be equal to gas, that the city thereby surrendered its

streets to any use that might be necessary for the introduction of any light which future invention might produce. The use might be of such a character as not only to inconvenience, but seriously affect the business and interests of its citizens. It might impede public travel and commerce, and amount, in a less or greater degree, to an abdication by the city government of its power to regulate these important public interests.

It is unreasonable to imply the power upon the part of the company to such a use of the streets for another reason. The entire contract must, of course, be considered in construing it. No use of the streets is named in the ordinance, save to supply gas. The first section grants the privilege of using the streets for laying pipes for this purpose. The second section regulates the manner of this use, *and places certain conditions upon it.* An unrestricted grant of the use of the streets for any other mode of lighting the city should not, therefore, be implied. The entire contract considered forbids it, and in case of the introduction of a light other than gas, requiring a different use of the streets, a consent upon the part of the city to such new use is necessary. The right is not to be implied from the ordinance in question, and unless it is made to appear that it has been otherwise given, the demurrer to the petition should be sustained and the action dismissed.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.