The Capital City Light and Fuel Company, a Corporation Under the Laws of Florida, Appellant, vs. The City of Tallahassee, a Municipal Corporation of the State of Florida, Appellee.

1. Powers granted cities and towns "to provide for the lighting of the streets of the city or town," and "to regulate, improve, alter, extend and open streets, lanes and avenues. and to cause encroachments and obstructions, decayed buildings and ruins to be removed," do not authorize a city to grant an exclusive privilege to use the streets, lanes and alleys thereof for the purpose of laying gas pipes therein or erecting poles, wires and towers thereon for supplying gas or electricity to the city or its inhabitants by corporations authorized to manufacture gas or electricity.

2. That provision of the general laws for the creation of corporations in force prior to 1892, found in section 30 p. 234, McClellan's Dig., did not confer any power upon cities and towns, or

aid or supplement the powers conferred by the general laws appertaining to the creation and powers of cities and towns, or in connection with other powers conferred on cities and towns, authorizes them to grant exclusive privileges for the use of their streets for laying gas pipes and erecting poles, wires and towers therein by gas or electric light companies organized under the general laws for the creation of corporations.

3. A grant of exclusive privileges, the possession of which will enable the grantee to obtain a practical monopoly for a limited time of a business affecting the public interest and convenience, must be strictly construed against the grantee; and nothing passes thereby but such as is clearly intended.

4. The exclusive privileges granted by statute (section 30, p. 234, McClellan's Dig.) to corporations organized under the general laws for the creation of corporations in force prior to 1892 did not attach to a corporation so organized until it was put into successful operation, and where by its articles of association it was organized to engage in more than one kind of business, the fact that it erected a plant and engaged in one kind of business authorized by its charter, did not vest it with exclusive privileges as to other kinds of business in which it never engaged, though authorized by its charter, so as to preclude the legislature from authorizing another municipal or private corporatin to engage in such business.

5. Where a corporation is by its charter authorized to engage in a business affecting the public interest and given exclusive privileges which tend to establish a monopoly, such grant of exclusive privileges does not become a contract or vested right so as to be protected from impairment by the State or Federal Constitution until the grantee has, to say the least, begun preparations or made some expenditures to perform the service to the public which constitutes the consideration for the grant of the privilege.

6. Even if a city has power to grant the exclusive use of its streets for erecting poles, wires and towers for furnishing electric lights in the city, and in pursuance of this power grants such privilege by ordinance with a provision therein that the grantee shall not be required to furnish such lights until such time as it can make an annual profit of eight per cent on its investment, such ordinance does not become a contract, the obligation of which is protected from impairment by the contract clause of the state and federal constitution, so long as he guarantee fails to begin preparations for, or make expenditures toward erecting, a plant for furnishing electric lights.

7. Where a corporation authorized to construct, maintain and operate a gas plant and an electric light plant to supply gas and electric lights in a certain city whose charter declares that when organized and put into successful operation the company shall have exclusive privileges for the purposes of its creation for the term of twenty years from the date it commenced to carry out

in good faith the terms of its articles of incorporaion, proceeds to erect its gas plant and to supply gas in the city, but for more than ten years after its incorporation it and its successors and assigns in interest fail to erect an electric light plant as authorized by its charter, or to begin preparations for so doing, the Legislature may authorize the city to construct and operate an electric light plant for supplying the city and its inhabitants with electric lights; and legislation for that purpose does not impair the obligation of a contract with the corporation or its successors and assigns in violation of the state and federal constitutions.

Appeal from the Circuit Court for Leon County.

*Statement.*

The Tallahasee Gas and Electric Light Company was incorporated in December, 1887, under the general incorporation laws then in force. In its articles of association it claimed power to sue and be sued, and to hold, lease, buy, sell, mortgage or otherwise dispose of such reality and personalty as might be necessary for the purposes therein stated. Its object and purposes were as therein stated, to construct, maintain and operate gas works and electric light works in the city of Tallahassee; to manufacture gas for light and fuel, or to dispose of and deal in coal or wood for fuel, and to maintain and operate electric light machinery for supplying lights in said city or for manufacturing and dealing in all manner of artificial light or heat within said city. The duration of the association was to be for twenty-five years. The capital stock of the company was to be $50,000 divided into shares of $100 each. The indebtedness was limited to an amount not exceeding the capital stock. Its principal place of business was to be at Tallahasee, Florida. The capital was to be paid in as required by law and by-laws to be adopted. The business was to be conducted by a

board of not less than three nor more than five directors, one of whom was to be made president, and officers were required to be, elected annually. Such subordinate officers were provided for as might be determined. After the incorporation of said company, it applied to the city of Tallahassee for the franchise, of erecting gas and electric light works in the city, and in January, 1888, the city passed an ordinance entitled "an ordinance to grant certain privileges to the Tallahasee, Gas and Electric Light Company," which, by its first section, provided that the Tallahassee Gas and Electric Light Company be and was thereby authorized to construct gas and electric light works in the city of Tallahassee, and for that purpose the said company were to have the right to lay their pipes in any and all streets in said city and in the alleys and lots of the same, and to erect such lamp posts, or poles, or towers as might be necessary or essential for furnishing gas or electric lights in said city, and to this end said company was authorized to make such excavations or erect such structures, poles or towers and run wires thereto along the streets of the city as might be necessary or essential, provided, that in laying such pipes or erecting such lamp posts, poles or towers the said company should not obstruct any street for a longer term than twelve hours. The second, third, fourth and fifth sections regulated the manner of laying pipes and erecting poles, towers, &c. The sixth section provided that the company should not be permitted to manufacture or supply gas for illuminating purposes of less than eighteen candle power, or to charge private consumers for said gas at any time an amount exceeding $2.50 per one, thousand feet, and the charge to the city for gas lamps was not to exceed $30 per annum for each·

30

lamp, of not less than twenty candle power, through burners of a capacity of four feet per hour. The seventh section provided that within thirty days from the taking effect of the ordinance the said company, their associates, successors, and assigns were required to file a written acceptance thereof in the office of the city clerk, whereupon the ordinance was to become binding upon both parties; the construction of the gas works was required to be commenced within thirty days after filing said acceptance, and said gas works were required to be completed and in practical operation within six months after the commencement of the construction thereof; and the company was thereby required to put in and operate electric lights as soon as sufficient consumers could be secured to pay eight per cent. interest per annum on the additional capital required to purchase the machinery for and put in practical operation the said electric lights. Section eight provided that if the company failed to complete the gas works within the time prescribed in the foregoing section, or failed to furnish gas at any time for the space of six months, or violated any of the provisions of the ordinance, the city council in its discretion might declare the ordinance null and void and repeal the same. The ninth section related to the lease of certain lands by the city to the company for a nominal sum per year for ninety-nine years. The tenth section provided that the city in consideration of the foregoing requirements being complied with on the part of the company, their associates, successors and assigns, obligated itself to take all gas it might wish to use in lighting its streets or buildings from said company at a price of not more than $1.50 per thousand feet, or such as might be used in public buildings used by the

city, and at a price of not more than $30 per annum for each street lamp as provided for in section six of the ordinance, for the period of twenty-five consecutive years from the completion of the gas works, provided that nothing therein was to be construed as an obligation on the part of the city to take any gas from the company. Section eleven was as follows: "That the privileges and licenses herein and hereby granted shall be exclusive in and to said Tallahassee Gas and Electric Light Company, their associates, successors and assigns, for and during the term of twenty-five years."

The Tallahassee Gas and Electric Light Company constructed its gas works under and in conformity to the terms of its charter and the ordinance, and began and continued the operation of the same and exercised the powers, privileges and franchises conferred on it by the charter and ordinance, including the contract for lighting the streets and buildings of the city, without molestation or interference until November, 1893, when the gas works, plant and property of every kind and character of the company were taken possession of by a receiver appointed by the Circuit Court of Leon county, in a chancery cause wherein Wm. M. McIntosh, Jr., as trustee, was complainant, and the company was defendant, and by virtue of a decree of foreclosure and sale made in said cause dated January 4, 1894, all lands belonging to the company, with the tenements, hereditaments and appurtenances thereon and thereunto belonging or appertaining, and also the plant, machinery and attachments thereto, whether movable or immovable, or whether pertaining to the reality or personalty, and the corporate franchise of said company, and all classes of property, real, personal and mixed then owned by said company,

were sold at public sale on February 5, 1894, to Wm. A. Rawls, and a deed executed to him therefor, under decree of the court. Thereafter, in March, 1894, the appellant company was incorporated under the general incorporation laws then in force, for the purpose of acquiring and operating under the terms of the city ordinance the property purchased by Rawls under the decree, and in pursuance of this purpose Rawls made over said property to the appellant company who entered into possession and assumed the management and control thereof, and continued the manufacture of gas for the purpose of supplying the city and its inhabitants with light and heat, and enlarged and extended the plant to meet the increased demands of the city and its inhabitants; and the city has ever since recognized, treated and dealt with the appellant company as the lawful successor to the Tallahassee Gas and Electric Light Company, and the legal assignee of all the rights, franchises, privileges and contracts created and conferred on the Tallahassee Gas and Electric Light Company by the said ordinance. The general nature of the business to be transacted by the appellant corporation, as expressed in its articles of association, was to acquire, construct, improve, maintain and operate gas works and electric light works in and adjacent to the city of Tallahassee; and to manfacture gas for light and fuel, to dispose of and deal in coal or wood for fuel, to construct, maintain and operate electric light machinery for supplying lights in and about said city, or for manufacturing and dealing in any and all manner of artifiical light or heat within or adjacent to said city.

At no time since the establishment of the gas works could there have been procured sufficient consumers of

electric light to pay eight per cent. interest per annum on the additional capital required to purchase the machinery for and to put in practical operation an electric lighting system in the city of Tallahassee.

By Chapter 4600, acts of 1897, cities and towns were expressly authorized to construct, purchase, lease establish and maintain one or more plants for manufacture or distribution of gas or electricity for furnishing light for municipal use and for the use of such of its inhabitants as might require and pay for same, under conditions therein mentioned.

By Chapter 4875, laws of 1899, the city of Tallahassee was specially authorized to exercise the powers provided by the said act of 1897, and the manner of exercising such powers was therein specified. In pursuance of the provisions of the statutes, the city of Tallahassee has since August, 1899, done everything necessary to enable it under the authority there conferred to contruct, establish and maintain an electric light plant for the manufacture and distribution of electricity for furnishing light for municipal use and for the use of such of its inhabitants as may require and pay for same, and in March, 1900, was preparing to construct such a plant. Thereupon a bill was filed in the Circuit Court of Leon county by appellant against the city, alleging the foregoing facts, and praying that the city be enjoined from establishing such a plant, alleging that its establishment would infringe upon appellant's alleged exclusive right to establish and maintain an electric light plant in the city of Tallahassee, which it claims to have derived from the Tallahassee Gas and Electric Light Company in the manner stated. It is claimed that the Tallahassee Gas and Electric Light Company derived such exclusive

right from the provisions of its charter and the city ordinance, and that such charter and ordinance constitute contracts between it and its assigns and the city, which can not be impaired by subsequent legislation authorizing the city to construct and maintain an electric light plant.

The cause was heard in the court below upon an application for temporary injunction as prayed, and upon a demurrer to the bill for want of equity filed by the city. Upon the hearing, May 15th, 1900, the application tor injunction was refused, the demurrer sustained and the bill dismissed, from which decree this appeal was entered.

The other facts in the case are stated in the opinion of the court.

*Fred T. Myers,* for Appellant.

### Brief for Appellant.

The Tallahassee Gas and Electric Light Company was incorporated December 20th, 1887, under the general incorporation act.

The general nature of the business to be conducted by the said corporation, as expressed in its articles of association, was to construct, maintain and operate gas works and electric light works, in the city of Tallahassee.

Under the law of its incorporation, the said company had exclusive privileges for the purposes of its creation for the term of twenty years from the date it commenced to carry out in good faith the terms of its articles of incorporation.

McClellan's Digest, page 234, Sec. 30.

After its incorporation the said company applied to

the city of Tallahassee for authority to construct gas and electric light works in said city, and for that purpose to lay pipes, and to erect such lamp posts or poles, or towers, and run wires thereto in and along the streets of said city as might be necessary or essential for furnishing gas or electric lights in said city of Tallahassee.

On January 4th, 1888, an ordinance was passed by the council of the city of Tallahassee, authorizing the said Tallahasse Gas and Electric Light Company to construct gas and electric light works in said city; and, for that purpose, the right to lay its pipes in any and all the streets, alleys and lots thereof, and to erect such lamp posts, or poles, or towers, as might be necessary for furnishing gas or electric lights in said city; and to that end to make such excavations or erect such structures, poles, or towers; and run wires thereto, along the streets of said city as might be necessary or essential.

See Sec. 1. Ordinance being Exhibit B to bill of complaint.

Secs. 2, 3, 4 and 5 of the ordinance, prescribe regulations to control the company in its use of the streets while putting in its plant.

Sec. 6 of the ordinance provides for the minimum candle power of the gas to be furnished for illuminating purposes, and a maximum price to be paid by private consumers per thousand feet, and by the city per lamp.

Sec. 7 provides that the company must file its written acceptance of the terms of the ordinance with the city clerk, within thirty days after it takes effect, whereupon, the same shall become binding upon both parties. And it also provides the time when the construction of the gas works must be commenced and completed; and that the company shall put in and operate electric light

works as soon as sufficient consumers can be secured to pay eight per cent. interest per annum on the additional capital required to purchase the machinery for and put in practical operation the said electric lights.

Sec. 8 provides that if the company shall fail to furnish gas at any time for the space of six months, or shall violate any provision of the ordinance, the council may repeal the same.

By sec. 10, of the ordinance the city binds itself to take from the company all gas that it may wish to use in lighting its streets or buildings for the period of twenty-five years; but with the proviso that it does not obligate itself to take any gas.

Sec. 11 provides that the privilges and licenses granted by said ordinance shall be exclusive in and to said company, their associates, successors and assigns for and during the term of twenty-five years.

The Tallahassee Gas and Electric Light Company could only have such powers and franchises as were conferred upon it by its own charter or by the city of Tallahassee, under a proper exercise of its powers.

At the time of the incorporation of the Tallahassee Gas and Electric Light Company, the city council of the city of Tallahasse had the power to provide for the *lighting* of the *streets* of the city; and to do and perform all such other acts as shall seem necessary and best adapted to the improvement and general interest of the city or town.

McClellan's Digest, page 249, Sec. 21.

The power to light the streets carried with it the powers of choice of means to accomplish the end.

Jacksonville Elec. L. Co., vs. City of Jacksonville, 36 Fla., 271.

The city council also had the power to regulate, improve, alter, extend,and open streets,lanes and avenues; and to regulate and control the grading, construction and repairs of all streets, pavements and sidewalks.

McClellan's Digest, page 248, Secs. 17 and 19.

The law of incorporation of the Tallahasse Gas and Electric Light Company must be construed in connection with the law of incorporation of the city of Tallahassee.

State of Florida ex. rel. vs. Jacksonville Street Ry. Co. 29th Fla. 590.

The city under the law of its incorporation, had the full control and management of its streets; and could give or refuse the Tallahassee Gas and Electric Light Company the right to use its streets for the purpose of placing its pipes, lamp posts, poles, towers and wires.

The State of Florida ex. rel. vs. Jacksonville Street Ry. Co., 29th Fla. 590.

"The authority of a general nature to regulate and control the streets, usually granted to municipal bodies is generally deemed sufficient to clothe the municipal body with the right to grant or refuse, or otherwise to regulate the use of the streets for street railways operated by horse power." Ibid.

"A difference exists between the power of a municipal corporation to grant a corporate franchise, and the right to permit a corporation vested with such franchise to place railroad tracks in the public streets. If the municipal body can ever grant a corporate frachise such power must be expressly conferred by the legislature." Ibid.

The powers conferred upon cities and towns by the general act, section 17, page 248 McClellan's Digest do not confer upon municipal corporations established thereunder the right to vest, by contract, in a street railway company, an exclusive right to construct tracks on all the streets of the city as laid out.

F. C. & P. R. R. Co. vs. Ocala St. & Sub. R. R. Co. 39th Fla. 306.

As we have seen the city of Tallahassee had the express power to provide for lighting its streets, and to do all such other acts as might be best adapted to the improvement and general interest of the city.

McClellan's Dig., page 249, Sec. 21.

The furnishing of gas and electricity for *domestic* consumption was adapted to the improvement and general interest of the city.

And as we have seen the city had the full control and management of its streets.

Such being the case, the Tallahasee Gas and Electric Light Company, though incorporated for the express purpose of lighting the city of Tallahassee, could not use the streets of said city for the purposes of laying pipes, and erecting posts, and wires without the consent of the city.

All the corporate franchises of the Tallahassee Gas and Electric Light Company were acquired by it from the provisions of the act under which it was incorporated, at the time it accepted and complied with the terms of said act in effecting its organization.

Under the terms of that act the company had exclusive privileges for the purpose of its creation, for the term of twenty years.

When the city passed the ordinance of January 4th,

1888, it was charged with notice that the company, upon being put into successful operation under its charter, would have exclusive privileges for the purposes of its creation, for the term of twenty years from the date the company commenced to carry out in good faith the terms of its articles of incorporation.

In the case of State ex. rel. vs. Jacksonville St. Ry. Co., 29th Fla. 590, cited above, this court holds that the Street Railway Company, which was incorporated under the general act for the incorporation of railroads and canals, obtained its *franchises* by virtue of its incorporation; but that the city of Jacksonville having the control of its streets, under the act of its incorporation, the railroad company could not occupy the streets without the consent of the city; and that the city in giving its consent might impose conditions and burdens on the company not imposed by the law of its organization.

In other words the court has construed the two acts (the general act for the incorporation of railroads, and the general act for the incorporation of cities) together; and the railroad company having been admitted to the streets of Jacksonville had all the rights and powers conferred by its charter, except where restrained or conditioned by the ordinance admittng it to the use of its streets.

The city of Tallahassee in its ordinance giving to the Tallahassee Gas and Electric Light Company the use of its streets for the purposes of its pipes, posts, poles and wires, even went further than the act under which the company was incorporated and made the period of exclusiveness twenty-five years—the period of the full life of the corporation—instead of twenty years as provided in the general incorporation law.

The Legislature, where not restrained by constitutional limitation, can grant the exclusive right to a company or individual to furnish gas or water to a city.

State vs. Milwaukee Gas Light Co., 29th Wis. 454.

New Orleans Gas Co. vs. La. Light Co. 115 U. S. 671.

New Orleans Water Co. vs. Rivers, 115 U. S. 680-1.

Louisville Gas Co. vs. Citizens Gas Co. 115 U. S. 683.

Crescent City Gaslight Co. vs. New Orleans Gaslight Co., 27w Law. Am. 138.

It makes no difference whether the franchise is granted by special act, or acquired under general law.

Such franchise when granted and accepted and acted upon, becomes a contract which cannot be impaired by subsequent legislation.

New Orleans Gas Co. vs. Louisville Light Co. 115 U. S. 671.

City of Quincy vs. Bull, 106 Ill. 351.

State ex. rel. vs. Columbus Gas Light & Coke Co., 32 Am. Rep. 390.

Walla Walla City vs. Walla Walla Water Co., 172 U. S., page 1.

This fact does not restrict the State or city to legislate to protect the public health, the public morals, or the public safety as the one or the other may be involved in the execution of such contracts.

See cases last cited.

The proviso of Sec. 30, page 234, McClellan's Digest Laws of Florida, recognizes this principle, and expressly provides that this investment, (with exclusive privileges), shall not so operate as to divest any future legislature of those powers of government which are in-

herent and essential attributes of sovereignty towit: the power to create revenue for public purposes, to provide for the common defence, to provide safe and convenient ways for the public necessity and convenience, and to take private property for the public use, and the like.

Also by Chapter 4052, acts of 1891, the Legislature of the Florida has recognized this principle, and expressly gives cities police power over such corporations, and provides a means of forfeiting thier charters, in case any reasonable regulation or requirement of this character is not complied with.

But where the contract is innocuous in itself, and is carried out with due regard to the good order of the city and the health of its inhabitants, the aid of the police power cannot be invoked to abrogate or impair it.

Walla Walla City vs. Walla Walla Water Co. 172 U. S. page 1.

It is true that the city of Tallahassee did not bind itself by the ordinance to take any gas from the company for lighting its streets or public buildings, but it did thereby contract, if it used gas at all, to take it from said company.

The power in a municipal corporation to light its streets does not make it the duty of the city to do so.

The supplying of gas for lighting purposes is not a municipal duty.

Bailey vs. City of Philadelphia, 39 Law. Rep. Anno. 637.

A city may lease its own gas works to a private party, or corporation, under contract to light the city.

Ibid.

A provision of an ordinance leasing city gas works, that the city will not in any way interfere with, limit re-

strict, or imperil the exclusive right thereby vested in the gas company does not create a monopoly against public policy where the franchise of the lessee is derived from the Legislature, and not from the city, and it merely makes the privilege exclusive so far as the city is concerned.

Bailey vs. City of Philadelphia, 39 Law. Rep. An. 637.

Walla Walla City vs. Walla Walla Water Co., 172 U. S. 17.

The inability of a common council to bind the discretion of its successors for a term of years in respect to a municipal or governmental function does not extend to a lease of city gas works in respect to which the city acts in a business capacity only.

Bailey vs. City of Phila., 39 Law. Rep. An. 637.

Illinois Trust & Sav. Bk. vs. Arkansas City, 34 Law. Rep. An. 518.

The ordinance of January 4th, 1888, by its 7th sec., provided, that when accepted by the company it should become binding upon both parties until such acceptance, the company though incorporated solely for the purpose of constructing, maintaining and operating gas works. and electric light works *in the city of Tallahassee*, was under no contractual obligation to do so, until it accepted the ordinance of January 4th, 1888.

While the city could not confer any franchise upon the company, the provision of section 11, that the privileges and licenses thereby conferred should be exclusive to the company, their associates, successors and assigns, for twenty-five years, was tantamount to an agreement on the part of the city that it would not itself become a competitor with the company in such business during

that period, the said company having been incorporated with a view of solely operating *in the City of Tallahassee,* and under the law of its organization, the privilege conferred being exclusive.

Such contract would not be ultra vires.

Bailey vs. City of Philadelphia, 39 Law. Rep. An. 637.

Walla Walla City vs. Walla Walla Water Co., 172 U. S. 1.

Atlantic City Waterworks Co. vs. Atlantic City, 39 N. J. Eq. 367; 48 N. J. Law. 378.

In the Walla Walla case the Supreme Court of the United States say, "agreement of this kind was a natural incident to the main purpose of the contract, to the power given to the city by its charter to provide a sufficient supply of water, and to grant the right to use the streets of the city for the purpose of laying water pipes to any person or association of persons for a term not exceeding twenty-five years. In establishing a system of waterworks the company would necessarily incur a large expense in the construction of the power house and the laying of pipes through the streets, and as the life of the contract was limited to twenty-five years, it would naturally desire to protect itself from competition as far as possible, and would have a right to expect that at least the city would not itself enter into such competition. It is not to be supposed that the company would have entered upon this large undertaking in view of the possibility that, in one of the sudden changes of public opinion to which all municipalities are more or less subject the city might re solve to enter the field itself a field in which it undoubtedly would have become the master and practically

extinguish the rights it had already granted to the company. We think a disclaimer of this kind was within the fair intendment of the contract and that a stipulation to that effect was such a one as the city might lawfully make as an incident of the principal undertaking.

But even if the franchise of lighting the city by gas and electricity is not exclusive in so far as the *public lighting* is concerned in view of the fact that the city made no positive contract to light its streets with gas and no contract to take electricity at all, yet the city, at the time of the incorporation of the company, and the passage of the ordinance had no power to enter into the business of private lighting for compensation, and such privilege having been acquired by the company, and being exclusive under its charter, it cannot be violated, or impaired by subsequent legislation authorizing the city to become a competitior in such business.

This is attempted to be done under chapter 4875 Laws of Florida Acts of 1899, page 306.

It was contended in the court below that the city in undertaking to furnish electric lighting does not violate any right of the company, as its lighting plant is a gas plant.

The right acquired by the company under its charter and the ordinance, was to light with both gas and electricity; but the company was only required to put in and operate electric lights when sufficient consumers could be secured to pay eight per cent. interest per annum on the additional capital required to purchase the machinery for and put in practical operation the said electric lights.

The bill alleges with reference to this feature of the contract as follows:

"That from the best of your orator's knowledge and belief there has never been a time, since the establishment of said gas works in said city, that your orator, or its predecessor, could have procured sufficient con·sumers to pay eight per cent. interest per annum on the additional capital required to purchase the machinery for and to put into practical operation an electric lighting system in said city."

The next question to be considered is did the franchises of the Tallahassee Gas and Electric Light Company pass to Rawls under the foreclosure sale, and from Rawls to the Capital City Light and Fuel Company under his deed of transfer.

The Tallahassee Gas and Electric Light Company had the power, under the law of its creation, to hold, buy, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its articles of incorporation.

McClellan's Digest p. 228, sec. 3.

The right to lay and keep its pipes in the streets, and to use the streets for the purposes of its business, is a franchise; and a francihse that is essential to the use of the property. This franchise necessarily passes with a sale ·of the property. But does it retain its exclusive character?

"The francise of being a corporation is not assignable. Neither a franchise involving the performance of public duties, nor the property necessary to the exercise of such a franchise, is assignable *without the consent of the State.* Subject to the exception just named the secondary franchises of a corporation, that is those peculiar and exclusive privileges which do not consist in the

right of being a corporation, are, property, and hence assignable."

Thompson on Corporations, Sec. 5352.

"If the property of a corporation is of such a character as to be adapted only to a particular use, a grant of authority to the corporation to transfer or mortgage the property would by implication include a grant of authority to confer upon the transferee or purchaser under the mortgage the right and power of applying the property to the particular use for which it is adapted. Otherwise the grant of the authority to transfer or mortgage the, property would be nugatory. A sale or mortgage of the property would destroy its usefulness, and confer nothing of value on the purchaser or mortgage."

"This principle of construction has special application to a grant to a railroad company of authority to sell, lease or mortgage its railroad. The property of a railroad company is practically worthless, except for use and operation as an entire railroad. Railroad companies do not ordinarily own the road-beds, but have a mere right of way or easement for railroad purposes; and even if they own their road-beds is fee it is evident that the land and the rails, ties and other structures would be of no substantial value without the right of using them as a railroad.

"It is immaterial whether the right of using and operating the railroad be regarded as a statutory right called a franchise, or as a license conferred by a municipality, or as a mere easement or property right existing under the common law, a transfer of the property pursuant to authority conferred by law would include a transfer of every right necessary for its continued operation."

Morawetz on Corporations, Sec. 932.

Detroit v. Mutual Gas Light Co., 43 Mich. 594.

A statutory power conferred upon a railroad company to execute a mortgage upon the road and its property carries with it by necessary implication the power to include in the mortgage its franchise of building the railroad.

Bardstown, &c., R. R. Co. v. Metcalf, 4 Metc. (Ky.) 199.

Coe v. Columbus, &c., R. R. Co. 10 Ohio St. 372, S. C. 75. Am. Dec. 518.

Trask v. Maguire, 18 Wall. 391.

California State Tel. Co. v. Alta. Tel. Co. 22 Cal. 3982.

Atkinson v. Marietta & C-R. R. Co. 15 Ohio St. 21.

If the privileges of operating gas and electric light works in the city of Tallahassee, and using the streets of the city for that purpose, was exclusive such exclusivenes was a valuable feature of the franchise. The foreclosure and sale did not carry with it the franchise of being a corporation which had been conferred upon the Tallahassee Gas and Electric Light Company, or the power to sue and be sued, to use a corporate seal, &c.; but it did carry all its property, and the right to use it for the purposes for which it was designated.

The franchise *exclusiveness* could not remain in the Tallahassee Gas and Electric Light Company after the sale, because, had it done so, it would have precluded the purchaser from making use of the property; for the exclusive right remaining in the Tallahassee Gas and Electric Light Company would have been violated the moment Rawls or the Capital City Light and Fuel Company began to use the gas works for the purpose for

which they were constructed. The mortgage and fore-closure sale thereunder did not destroy any franchise, for such as did not pass remained with the mortgagor, and if that be true, and the theory that the franchise of exclusiveness remained in the original company is inconsistent with the use of the property mortgaged, then such franchise must have passed with the property.

An exclusive franchise may pass by sale.

California State Tel. Co. v. Alta. Tel. Co. 22 Cal. 398.

Thompson on Corporations, Sec. 5369.

Detroit v. Mutual Gas. Co., 43 Mich. 594.

Willamette v. Bank, 119 U. S. 191.

If this exclusive privilege passed with the property, and the right to its use, there was nothing in the fact that the purchaser was an individual inconsistent with the enjoyment of the privilege.

If an individual could enjoy it, then a corporation clothed with the power of using the property could acquire it, it having been legally created and being the subject of mortgage and sale, although such exclusive privilege was not one of the franchises conferred on the second corporation by the act of its creation.

The exclusive right was created with the original corporation. That company had the power to and it did mortgage its property. This exclusive privilege was an incident of the use of the property mortgaged and one the retention of which by the original company was inconsistent with the mortgage and the sale under it, and the use of the property by the purchaser. While the second company had no exclusive franchise under its own charter, there was nothing which prevented it, under its general power of *acquiring*, maintaining and

operating gas works and electric light works in the city of Tallahassee, from acquiring by purchase such a right already existing and incident to the property which it acquired under the terms of and for the purposes of its charter.

The complainant claims that, by its purchase, it has the exclusive privilege of operating gas and electric light works in the city of Tallahassee, and furnishing the city and its inhabitants with light by such means for the balance of the period of twenty-five years, under the ordinance, or, at least, for the balance of the period of twenty years, under the law creating the Tallahassee Gas and Electric Light Company. And if the court should hold that the city has the right to light its streets and public buildings by its own lighting system, then complainant claims that the exclusive privilege claimed by the Capital City Light and Fuel Company, as the assignee of the Tallahassee Gas and Electric Light Company, extends to the domestic lighting, and that the city can not go into the business of private lighting for compensation in competition with the complainant.

*Brief for Appellant in Reply to Brief for Appellee.*

The constitution of 1868 contained the following provisions: Art. IV, Sec. 21. "The Legislature shall establish a uniform system of county, township and municipal government."

Art. IV, Sec. 22. "The Legislature shall provide by general law for incorporating such municipal, educational, agricultural, mechanical, mining and other useful companies, or associations, as may be deemed necessary."

The first legislature which convened under this constitution passed "An Act to provide for the Incorporation of Cities and Towns, and to establish a Uniform System of Municipal Government in this State."—Chap. 1638; Laws of Florida. This act was approved August 6th, 1868. It also passed An Act entitled "An Act to provide for the creation of Corporations and to Prescribe their General Powers and Liabilities." Chap. 1639; Laws of Florida. This act was approved August 8th, 1868.

It is clear that both of these acts were passed in obedience to the constitutional mandate quoted above; and that each was passed with knowledge of and reference to the other.

Sec. 12, Chap. 1638, confers upon cities to be incorporated thereunder "the power to regulate, improve, alter, extend and open streets, lanes and avenues."

Sec. 15, of Chap. 1638 confers the power to provide for the lighting of the streets of the city or town.

Sec. 1 of Chap. 1639 provides that any number of persons may associate themselves and become incorporated for the transaction of any lawful business of *a public* or private character *including all works of internal improvement.*

What are usually denominated the *corporate* powers are stated in section 2.

Sec. 10 of this act confers upon any corporation organized under it the power to enter upon any land or lands, *public or private*, necessary to the business contemplated in its articles of association.

Sec. 37 provides that nothing contained in the statute should be construed to extend to any *county* or *township*.

Mark the omission of "municipal corporation" as grouped with county and township in Sec. 21, Art. IV of the Constitution of 1868.

Sec. 38 provides that any corporation organized and *put into successful operation* under this act shall have *exclusive privileges for* the purposes of its creation, for the term of twenty years from the date the corporation commences to carry out in good faith the terms of its articles of incorporation.

The language of section 15, Chap. 1638 with reference to lighting the city is very general in its terms. It is: Shall have power * * * to *provide for* the lighting of the streets.

It is clear from the language of the 1st Sec. of Chap. 1639, that corporations could be created thereunder for either *public* or private purposes.

The power of eminent domain, and the *exclusive privilege* franchise could only have been intended to be conferred on corporations created for a public purpose.

It would not be contended that a corporation created for the purpose of conducting a grocery business in the city of Tallahassee would either have the right to condemn a building to be used for its business, or have a monopoly of the grocery trade in the city.

But these provisions must be given some meaning; and they can only be extended to such subjects as they had been previously known to relate to. The revisers have omitted from the Revised Statutes the section providing for *exclusive* enjoyment of franchises; and have limited the exercise of the right of eminent domain to corporations organized for the purpose of constructing, maintaining, or operating *public works.* Sec. 2158.

The Tallahassee Gas and Electric Light Co., was in-

corporated for the purpose of constructing, maintaining and operating gas works and electric light works in the city of Tallahassee.

It was a public purpose, and the company could have the right of eminent domain and also the exclusive franchise.

But as stated in the original brief, the city having been vested with authority over its streets, the company could not occupy the streets for its purposes without authority from the city.

State ex. rel. vs. Jack. St. Ry. Co., 29th Fla. 590.

The two acts must be construed together. The court cannot reject any part of either.

We need not go beyond the authority of this court for affirmation of the statement, made by Judge Cooley in his work on municipal corporations, of the law as to the powers possessed by municipal corporations, that "a municipal corporation can exercise only such powers as are granted to it in express terms, or those necessarily or fairly implied in or incident to the powers expressly granted, or those that are essential and indispensable, not simply convenient, to accomplish the objects and purposes of the corporation."

F. C. & P. R. R. Co. vs. Ocala St. & Sub. R. R. Co. 39th Fla. 306.

The facts of the authorities cited by appellee's counsel in support of the first proposition of his brief, show, in each of those cases where a city was involved, that the company was claiming its exclusive franchise solely under municipal ordinance, and not under the law of its own creation; and that the power had not been vested by the legislature in the municipal corporation to confer any such franchise.

The cases more in analogy with the case at bar are those cited in the brief of appellants counsel from 115 U. S. Repts. which, while the law of incorporation therein discussed were special acts, do not differ in principle from cases wherein the corporate franchises are acquired under general law.

The authority of these latter cases to the extent of the facts there involved qualify the Kalamazoo market case.

They hold that no legislative power is taken from the city thereby.

The case of Lehigh Water Co.'s Appeal, 102 Pa. St. 515, so far as the point it is cited as authority to is concerned, went off on the peculiar language of the act of 1874 giving the exclusive privilege. In the opinion it is said that "a careful examination of clause 3, Section 34, shows that the legislature intended that the right should be exclusive only as against other water companies for immediately in this connection occur the words 'and *no other company should be incorporated for that purpose* until &c.' "

An exclusive privilege conferred is not like an immunity from taxation granted.

The case of Morgan vs. Louisiana, 93 U. S. 217, draws a distinction between franchise and immunity. One is positive, the other negative.

Franchises are rights or privileges which are essential to the operation of the corporation, and without which its works would be of little value.

Exemption from taxation is an immunity. It is personal to the company to which it is granted; and cannot be transferred without express legislative authority.

The history of the act of June 2nd, 1893, Chap.

4166, is this: The City of Tallahassee and the Tallahassee Waterworks Co., had a disagreement over the contract between them for supplying the city with water. The city claimed that it had no authority to make the contract which it had entered into. It proposed a revising of the ordinance, and, with a view to what was considered by them necessary legislation to authorize the proposed contract, certain members of the council had prepared and passed the act of 1893. In the meanwhile the Waterworks Co. brought suit against the city upon the original ordinance as a contract and the contract for supplying the city with water was upheld.

If the gas company had the exclusive franchise of constructing gas and electric light works in the city of Tallahassee and had mortgaged all its property and franchises, and these were sold and bought by Rawls, they could be acquired from him by purchase by the Capital City Light and Fuel Company under its power to *acquire* gas works and electric light works.

At the time of the passage of the ordinance of January 4th, 1888, the city of Tallahassee was lighting its streets with kerosene lamps. Hence while it fixed the price for gas for street lighting and agreed to take all gas which it might wish to use for lighting its streets, from the company, at the price named, it did not obligate itself to take any gas; and it might have gone on indefinitely lighting its streets with kerosene.

The city by consenting to the company coming in under the terms of its charter, and of its ordinance, made a valid contract, when the ordinance was accepted, binding on both parties: And the right to construct, maintain and operate gas works and electric light works

in the city of Tallahassee became an exclusive one in the company.

By the agreement between the city and the company the latter is only required to put in an electric plant when sufficient consumers can be secured to pay eight per cent. interest per annum on the additional capital required for that purpose.

Until this agreement (the passage and acceptance of the ordinance) the company was under no contractual obligation to put in either gas or electricity. By the agreement gas was to be the immediate illuminating medium, and electricity was to be added when sufficient consumers could be obtained to guaranty the supecified interest on the additional capital required.

The eminent domain feature of Chapter 4600, Laws of Florida, Acts 1899, page 141, we re-respectfully reply, do not bring the action of the city in this case within the proviso of Sec. 30, page 234 McClellan's Digest, as argued by counsel for appellee in additional brief. Sec. 9 of that act provides: "If in such city or town a single corporation owns or operates both a gas plant and an electric light plant such purchase shall include both of such plants, but otherwise such city or town shall only be obliged to purchase the existing gas plant or plants if it has voted only to establish a gas plant and shall only be obliged to purchase the *existing electric plant or plants if it has only voted to establish an electric plant.*"

And it goes on to provide that if the main gas works, or central lighting station of such plant, do not lie within the limits of the city or town, then the city or town shall only purchase that portion of such plant and property which lies within its limits without allowing

any damage on account of severance (severance) of plant .

In this case, though the pleadings do not show it, as a matter of fact "the main gas works" do not lie within the limits of the city.

And as there is no *existing* electric plant belonging to the company and the city proposes to put in an *electric* and not a gas plant, there was no law under which the company could apply to the city, under the pretended eminent domain provision, for relief.

*Geo. P. Raney*, for Appellee.

PER CURIAM: (*After stating the facts.*)

As will be observed from the statement of the pleadings, the city of Tallahassee is asserting no right to put in and operate a plant for manfaucturing gas to supply light and heat for the use of the city or its inhabitants. It proposes to erect a plant to furnish lights for municipal use, and for the use of its inhabitants, by means of electricty only. A careful reading of the ordinance passed in 1888 will show that the city is under no obligation whatever to the appellant or its predecessor company to light the streets and public buildings of the city with either gas or electricity manufactured by said companies. Nothing is said in the ordinance about lighting the streets or public buildings with electricity manufactured by the company. In respect to gas, the city was not required to use any at all, but it obligated itself to take all gas that it might wish to use in lighting its streets and buildings from the company at prices not to exceed the amounts named for a certain term of years.

There is no contract, therefore, between the city and the company that the latter shall have the right to furnish the city for lighting its streets and public buildings all or any electricity used for that purpose, nor is there any stipulation in the ordinance that the city will use nothing but gas, nor that the city will not own or operate an electric light plant for supplying the city and its inhabitants with light. If the city is debarred from erecting an electric light plant by the ordinance passed by it, it is because that ordinance legally grants the company the exclusive privilege and license to use the streets, alleys and lots of the city for the purpose of constructing and operating a plant and its instrumentalities for furnishing electric lights in the city. Our first duty is, therefore, to determine whether the ordinance legally grants this exclusive privilege and license.

At the time of the passage of the ordinance all the powers possessed by the city of Tallahassee in reference to lighting the city and authorizing the erection of structures in and over the streets were contained in the general incorporation law for cities and towns. A general power was given "to provide for the lighting of the streets of the city or town" (section 21, p. 249 McClellan's Dig.), and also "to regulate, improve, alter, extend and open streets, lanes and avenues, and to cause encroachments and obstructions, decayed buildings and ruins to be removed." Section 17, p. 248 ibid. These powers gave the city no authority to grant any exclusive privilege to use the streets of the city for the purpose of laying pipes or erecting poles and towers for furnishing gas or electric lights. Florida Central and Peninsular R. R. Co. v. Ocala Street and Suburban R. R. Co., 39 Fla. 306, 22 South. Rep. 692; Grand Rapids E. L. & P.

Co. v. Grand Rapids E. E. L. & F. G. Co., 33 Fed. Rep. 659, and authorities there cited. So far as any exclusive privilege for the use of the streets claimed under the ordinance by the appellant or its alleged predecessor is concerned, it is sufficient to say that no such exclusive right could be granted by the city because of the want of power to grant it. That portion of the ordinance attempting to grant such exclusive use, either as to gas or electricity, is, therefore, void. The appellant does not, however, rely exclusively upon the provisions of the statutes quoted for authority in the city to grant the exclusive feature of the ordinance in question. It contends that the ordinance may be sustained under a power conferred by the general incorporating act under which its alleged predecessor company was chartered, to the effect that "any corporation organized and put into successful operation under this chapter shall have exclusive privileges for the purposes of its creation for the term of twenty years from the date the corporation commenced to carry out in good faith the terms of its articles of incorporation; provided, however, that this investment shall not so operate as to divest any future legislature of those powers of government which are inherent and essential attributes of sovereignty, to-wit: the power to create revenue for public purposes, to provide for the common defence, to provide safe and convenient ways for the public necessity and convenience and to take private property for the public use, and the like." Section 30 McClellan's Dig. p. 234. We do not think this section adds any thing to the powers of the city. It has no reference whatever to municipal bodies. It does not purport to confer any power on them, or to aid or supplement the powers conferred by the general law apper-

taining to the creation of municipal bodies. It purports to grant certain privileges directly by the legislature, but it does not pretend to authorize municipal bodies to grant any, and it is clear from its language that there was no design in enacting it to confer power on municipalities to grant exclusive privileges. Whatever rights and privileges of an exclusive nature the Tallahassee Gas and Electric Light Company possessed must, therefore, be derived from the general incorporation act · under which it was incorporated, and this brings us to the further contention that that company by the provisions of the statute last quoted had an exclusive right to use the streets of the city so far as the business of manufacturing and distributing gas and electricity for the use of the city and its inhabitants is concerned, and that the appellant company has succeeded to all of its rights and privileges. And here it may be well to remark that the statute referred to was repealed before the appellant corporation was chartered under the general law, so that if it possesses any exclusive privileges of the nature claimed, they are not · derived from its own charter or any ordinance of the city enacted after its incorporation, but are derived solely from its alleged purchase of its predecessor's property, corporate franchises and privileges.

The appellee contends that exclusive privileges of the character claimed in this case are not embraced within the class of exclusive privileges which the statute quoted properly interpreted meant to grant, and further, that if they are, such privileges are personal to the original corporation to whom granted, and can not be transferred to another by mortgage, or by judicial sale. It claims also that the public nature of the business in

which the company was authorized to engage brings the charter within the proviso of the section which reserves power in the legislature to take away the exclusive feature of the privileges granted under circumstances therein mentioned, and that, therefore, the legislature had power to repeal the statute, as it did by the adoption of the Revised Statutes of 1892, or at least to modify the exclusive character of the privilege granted so as to authorize the city, for the public interest and convenience, to establish and operate an electric light plant within the city, as it did by the acts of 1897 and 1899. These are questions which we do not find it necessary to decide in the present case, being content to rest our decision upon other grounds which we deem conclusive.

It appears from the pleadings that neither the Tallahassee Gas and Electric Light Company, nor the appellant company, ever established an electric light plant in the city of Tallahassee in pursuance of the authority conferred upon either of them. From the organization of the first company up to the time the gas plant was sold at judicial sale, about six years had elapsed, and from the time of the judicial sale to the time the city began proceedings to enable it to establish an electric light plant, about six years more elapsed. During all this period of time neither company attempted to construct an electric light plant as authorized by its charter. In the meantime that provision in the general incorporation law relating to exclusive privileges had been repealed by the legislature of 1891, and an act passed in 1897 specially authorizing cities and towns to establish gas and electric light plants to supply themselves and their citizens with light, and still later, in 1899, special legislative authority was given the city of Tallahassee to

establish an electric light plant. Neither the Tallahassee
Gas and Electric Light Company, nor appellant com-
pany, has acquired any vested right to erect· an electric
light plant, by the investment of any money in any such
plant, and the question arises as to whether or not any
constitutional right has been impaired by the repeal of
the statute granting the alleged exclusive privilege and
by the legislation.authorizing the city to do that which is
a public benefit, and that which for some twelve years
the companies have neglected to do· as authorized by
their charters and the city ordinance. We are unable to
see that any vested right of either company so far as the
·establishment of an electric light plant is concerned, is
impaired by the legislation which authorizes the city to
do that which it now proposes to do. In the first place,
the statute properly construed does not grant the exclu-
sive privilege in respect to the electric light plant as
claimed. A grant of exclusive privileges to appellant's
predecessor would be the grant of a franchise from the
State, the possession of which would enable it to obtain
a practical monopoly of the gas and electric light busi-
ness in Tallahassee for the term specified. All such grants
are strictly construed against the grantee, and nothing
passes thereby but such as is clearly intended. Saginaw
Gas Light Co. v. City of Saginaw, 28 Fed. Rep. 529;
Florida, Atlantic & Gulf Central R. R. Co. v. Pensacola
& Georgia R. ·R. Co., 10 Fla. 145. Under the express
language of this statute the *exclusive* privilege did not at-
tach until the corporation was not only organized, but
put into successful operation, and the privileges were to
attach for twenty years from the time the corporation
commenced to carry out in good faith the terms of its
articles of incorporation. The condition upon which the

32

exclusive privilege, so far as the electric light plant was concerned, has never been perfomed, for the company has never been put into successful operation so far as that branch of its business is concerned, nor has it ever commenced to carry out in good faith the terms of its articles of incorporation in regard to erecting an electric light plant. The first company never acquired the right to the exclusive privilege mentioned in the statute, because it failed to perform the condition precedent, and therefore it had no exclusive privilege to transfer to appellant company, so far as the electric light plant is concerned. In the next place, even if an exclusive privilege of this nature, tending to establish a monopoly, was granted without such express condition precedent as we find in our statute, such grant does not become a contract or a vested right so as to be protected by the constitution of the State or the United States, until the company has, to say the least, begun to do the thing required by the charter as the consideration for the grant of such privilege. Pearsall v. Great Northern Railway Co., 161 U. S. 646, 16 Sup. Ct. Rep. 705; Louisville & Nashville Railroad Company v. Kentucky, 161 U. S. 677, 16 Sup. Ct. Rep. 714. See, also, Chincleamouche Lumber and Boom Co. v. Commonwealth, 100 Pa. St. 438. It would be going too far to hold that the clauses of those constitutions protecting the obligations of contracts from impairment would enable one legislature to tie the hands of another in matters of public convenience and interest, such as lighting cities, by granting charters containing exclusive privileges to perform these public benefits which are held for speculative or other purposes, without attempt to execute the powers granted. Gonzalez v.

Sullivan, 16 Fla. 791, text 820; Elliott on Roads and Streets, p. 569 *et seq.*

Our attention is called to that clause in the seventh section of the city ordinance which required the company to put in electric lights only when sufficient consumers could be secured to pay eight per cent. interest per annum on the additional capital required to purchase the machinery and put in successful operation electric lights. It would appear from this clause that from the beginning the company only intended to avail itself immediately of that provision of its charter authorizing it to erect a gas plant, and to use the other power granted by its charter, together with the city ordinance, to shut out competition in its business from eletric light companies, intending only to put in an electric light plant whenever that plant could be made to secure it an annual profit on its investmenent in that plant of eight per cent. It is quite apparent that the legislature never intended to secure to it any such right; but, on the contrary, intended the privilege to extend only so far as to secure the company from competition in matters wherein it had complied with its charter by being put into successful operation. We have seen that the city had no authority to grant exclusive privileges to use its streets for the purpose of furnishing light from gas and electricity, but even if it did have such power, it could not confer such exclusive right and at the same time defer construction of the plant until such time as it could be made to pay eight per cent. upon the investment. The effect of such a provision in an ordinance like the one we are considering is, that the city will not permit any other person or corporation to use its streets for the public purpose of furnishing electric lights for twenty-

five years, but at the same time will not require the person or corporation to whom the exclusive privilege is granted to furnish such lights until such time as it can make an annual profit of eight per cent. on its investment. The city has no such power over its streets, which are held by it in trust for the public benefit (Florida Central and Peninsular R. R. Co. v. Ocala Street and Suburban R. R. Co., 39 Fla. 306, 22 South. Rep. 692; Gonzalez v. Sullivan, 16 Fla. 791, text 820), and even if it did, so long as the grantee failed to invest money in a plant the ordinance could be repealed or modified—being without consideration.

We have not overlooked the fact that the first company perfomed its charter powers in part by erecting and operating a gas plant, and as to that plant, and the business connected therewith, it may have possessed exclusive privileges under the statute which could not be impaired by subsequent legislation, and it may be that such privileges passed to appellant through the judicial sale. As to that we express no opinion. But while the purpose of erecting both plants would be the same, in that they would both furnish light to the city and its people, yet they furnish a different light and require separate and different plants and instrumentalities for their operation. We think they are so distinct in character as to amount to separate undertakings, and they are so treated in the articles of association of both companies and in the ordinance.. Power to operate the one would not include power to operate the other, and permission to use the streets for one would not include permission to use them for the other. City of Newport v. Newport Light Co., 89 Ky. 454, 12 S. W. Rep. 1040. The exclusive privileges as to the electric light plant

could not have operated as a consideration for erecting the gas plant, for such privileges under the statute were to attach to the electric light business only when that plant was put in.

The decree of the court below is affirmed.